THE STATE OF OHIO, APPELLANT, *v.* MORRIS ET AL., APPELLEES.

(No. 53679—Decided May 9, 1988.)

*John T. Corrigan,* prosecuting attorney, and *James Gutierrez,* for appellant.

*James Draper,* for appellees.

PRYATEL, P.J. Defendants-appellees Leon Morris and Willetta Gaffney were indicted on October 9, 1986, for possession of cocaine. Pursuant to a motion to suppress evidence filed by defendants, a hearing was held on April 1, 1987, where the following evidence was adduced.

Special Agent Ralph Villaruel of the Drug Enforcement Administration and Detective James Salvino of the Cuyahoga County Sheriff's Department were on a detail at Cleveland Hopkins Airport on October 7, 1986. The detail consisted of watching passengers arriving from "source" cities who may be transporting narcotics. A "source" was considered a southern city with high drug activity, such as Miami.

At approximately 6:15 p.m., Villaruel and Salvino were watching Delta Airlines flight 374 arrive from Atlanta. Their attention was immediately drawn to defendant Gaffney, who was walking quickly through the concourse and looking over her shoulder. Gaffney was carrying a white handbag and a brown suitcase, and was met by defendant Morris, whereby she handed him the brown suitcase. Villaruel and Salvino followed the defendants, who walked quickly towards the exit and continued looking suspiciously around them.

Villaruel and Salvino ran to catch up to the defendants at the exit doors, identified themselves as police officers, and asked if they could talk to them. Defendants consented, and Salvino asked Gaffney where was she coming from. Gaffney replied "Atlanta," so Salvino asked to see her ticket. Gaffney complied and the ticket (1) indicated the flight had originated at Miami, and (2) was issued to Willetta Morris, even though she had told Salvino her last name was Gaffney.

Meanwhile, Villaruel asked Morris whose suitcase he was carrying and he replied it was his, even though he had not been on the plane with Gaffney. Both defendants appeared nervous, and Salvino told Gaffney that they were looking for drugs coming through the airport; he asked to search her bag. Before she responded, Morris kneeled on the ground and opened "his" suitcase, which did not reveal any men's clothing. Villaruel also observed a packet (which turned out to be cocaine) wrapped in a napkin; as he reached for it Gaffney lunged for Villaruel, attempting to grab the packet.

Both defendants were placed under arrest and taken to a nearby office where they were advised of their rights. Gaffney then admitted she was carrying more drugs and consented to a search of her purse. A total of 249.8 grams (over one-half pound) of cocaine was seized from the purse and suitcase.

The trial court granted defendants' motion to suppress, holding that "based on facts presented * * * that the officer[s] had [no] articulable suspicion that these two parties had created or committed or were about to commit a crime." The state appeals that decision, assigning two errors for review.

Assignment of Error No. I.

"I. The trial court erred in suppressing the evidence since the agents had objective justification sufficient to create reasonable suspicion that the defendants were engaging in criminal activity."

As a starting point we acknowledge that not every encounter between a citizen and a law enforcement officer implicates the Fourth Amendment, e.g., consensual encounters which involve no coercion or restraint of liberty. Another type of contact is the so-called *Terry* stop: minimal intrusion justified by reasonable and articulable suspicion of criminal activity. This rationale has been extended to include drug courier cases even where there is no apparent danger that the suspect is armed. Finally, there are full-scale arrests which must be based upon probable cause. *United States* v. *Poitier* (C.A. 8, 1987), 818 F. 2d 679.

In the instant case, the facts reveal that the encounter between Villaruel, Salvino and defendants escalated from a consensual encounter into probable cause for arrest. Thus, when Villaruel and Salvino first approached the defendants and asked to talk with them and ask them questions and received permission, there were no Fourth Amendment implications. *Florida* v. *Royer* (1983), 460 U.S. 491, 497; *Florida* v. *Rodriguez* (1984), 469 U.S. 1, 6. Nor did the fact that Villaruel and Salvino identified themselves

as law enforcement officers convert the encounter into a seizure requiring some level of objective justification. *Royer, supra,* at 497; *United States* v. *Mendenhall* (1980), 446 U.S. 544, 555.

During that initial encounter (which lasted no more than a minute and a half to two minutes), defendants were not under arrest and were free to leave. However, they agreed to talk and answer questions.

In speaking with the defendant Gaffney, Detective Salvino was able to develop inconsistencies that, when coupled with the previously observed conduct of *both* defendants, elevated the encounter into reasonable, articulable suspicion. For instance, Gaffney said she was coming from Atlanta when in fact her flight had originated at Miami (a focal point of drug activity). The name on her ticket was different (Morris rather than Gaffney) and the ticket had been paid for in cash (a drug courier profile characteristic). Both Gaffney and Morris appeared to be nervous. Moreover, defendant Morris told Agent Villaruel that the brown suitcase was his even though he had not been on the flight with Gaffney. Indeed, the contents of the suitcase later revealed no men's clothing.

Therefore, what had begun as a consensual encounter ripened into an objective justification to further detain the defendants. Salvino essentially advised the defendants that they were suspected of transporting drugs and asked to search their luggage. The uncontroverted evidence revealed that defendant Morris knelt down and voluntarily opened the brown suitcase (of which he claimed ownership). When Villaruel observed the packet, Gaffney's actions in lunging at Villaruel and grabbing for the packet provided further reasonable suspicion and, with the discovery that the packet contained cocaine, probable cause for arrest.

While each fact in isolation may not appear to be "remarkable," when viewed as a whole through the trained eyes of experienced law enforcement officers, they provided clear justification to pursue a limited investigation regarding the defendants' activities. *State* v. *Dawley* (Apr. 23, 1981), Cuyahoga App. No. 43097, unreported; cf. *United States* v. *Sharpe* (1985), 470 U.S. 675.

The first assignment of error is sustained.

### Assignment of Error No. II

"II. The search conducted subsequent to the stop did not violate the Fourth Amendment since consent for the search [had been] given."

The trial court found that in light of the fact that the initial stop of the defendants was illegal, the issue of consent to the subsequent search of the suitcase need not be addressed. However, since we have held that (1) the initial request to speak and (2) the ensuing detention of the defendants ripened into a valid seizure, we turn to the issue of whether there was sufficient evidence to find that consent was voluntarily given.

In the instant case neither Villaruel nor Salvino wore a uniform, brandished a weapon or summoned the defendants to them. Rather, they approached the defendants and asked to speak with them, to which the defendants consented. See *United States* v. *Mendenhall, supra,* at 555.

Once Villaruel and Salvino reached that quantum level of suspicion to justify further intrusion, the uncontroverted evidence reveals that, when the officers asked to search the luggage, Morris knelt down and opened the suitcase. Nor did defendant Gaffney make any objection until Villaruel discovered the packet of cocaine. A suspect may give a valid consent to a search even if the suspect is not in-

140

formed that he or she has a right to refuse to consent. *State* v. *Hassey* (1983), 9 Ohio App. 3d 231, 9 OBR 403, 459 N.E. 2d 573, paragraph four of the syllabus.

Based on a totality of the circumstances and the conspicuous absence of any allegations by the defendants that their consent was given in submission to a claim of lawful authority (*Bumper* v. *North Carolina* [1968], 391 U.S. 543, 548), we hold that the consent here was voluntary.

The second assignment of error is sustained.

*Judgment reversed and cause remanded.*

KRUPANSKY and MATIA, JJ., concur.