The STATE of Ohio, Appellee,

v.

BRAXTON, Appellant.

[Cite as *State v. Braxton* (1995), 102 Ohio St.3d 28.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 66859.

Decided March 21, 1995.

30

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *Jeffrey H. Margolis,* Assistant Prosecuting Attorney, for appellee.

*Paul Mancino, Jr.,* for appellant.

DONALD C. NUGENT, Judge.

This is an appeal from a judgment of conviction from the Cuyahoga County Court of Common Pleas stemming from a jury verdict finding defendant-appellant, Charles Braxton, guilty, as indicted, of receiving stolen property, a motor vehicle, in violation of R.C. 2913.51, together with a violence specification.

The facts as adduced from appellant's jury trial are set forth as follows:

On April 23, 1993, Steve Vukmer, appellant's parole officer, visited appellant's home as part of a regularly scheduled visit and in response to a conversation with a drug counsellor at the CAAA drug treatment program. As is customary, Vukmer was accompanied by Kenneth McAllister, another parole officer.

As Vukmer and McAllister knocked on the side door of appellant's house, they observed a car parked behind the house in a grassy area of the driveway. According to Vukmer, appellant answered the door and gave Vukmer and

McAllister permission to go inside. Vukmer testified that as a condition of parole, appellant had signed, on two separate occasions, a conditional release form which stated the following:

"9. I agree to a search without warrant of my person, my motor vehicle, or any place of residence by a parole officer at any time."

Once inside, Vukmer spoke to appellant about the conditions of his parole. As Vukmer spoke with appellant, McAllister noticed automobile parts scattered throughout the house. McAllister observed a tool box and parts to a luggage rack lying in the kitchen, as well as hubcaps, a radiator and other auto parts scattered elsewhere in the house. McAllister also noticed that appellant's hands were greasy and that appellant had a greasy bandage on his thumb. Both witnesses further testified that they observed a dark, oil-based cleaning solvent inside a bathtub in a bathroom off the kitchen.

After McAllister brought his observations to Vukmer's attention, McAllister took the pieces of the luggage rack and went outside to check on the car behind the house. McAllister testified that the luggage rack made a perfect fit with the car. McAllister stated that the screw holes of the luggage rack fitted perfectly with the holes on the car and that the rust and dirt lines of the luggage rack matched those on the car.

Vukmer testified further as to the condition of the car. He stated that the car was on blocks, the wheels were missing, the steering column was peeled, the key hole was punched out, the car was stripped, and the hood was partially open. Moreover, both witnesses testified that the car was very close to appellant's home. Vukmer stated the car was within five feet of appellant's house. McAllister added that the back of appellant's house was approximately three car lengths from another house, which shared the driveway with appellant's house. Both witnesses added that the car was clearly in appellant's yard.

McAllister then obtained the car's vehicle identification number and ran the number through the LEADS computer. Through the computer, McAllister learned that the car had been reported stolen on March 16, 1993. The Cleveland Police Department was then contacted. Vukmer and McAllister then placed appellant under arrest and read him his constitutional rights.

Cleveland Police Officers Diane Elfers and Tanya Allen responded to the scene. Officer Elfers independently confirmed that the luggage rack fitted the car and further ran the VIN through the LEADS computer, confirming that it had been stolen. Officer Elfers added that she could barely get between the house and the car to check the VIN because the car was so close to appellant's house. Officers Elfers and Allen placed appellant under arrest, confiscated the luggage rack and had the car towed.

· Appellant stipulated that the car was, in fact, stolen. After moving unsuccessfully for a judgment of acquittal pursuant to Crim.R. 29, appellant called his sixteen-year-old stepson, Eugene Rodgers, as his sole witness. Eugene testified that he found the luggage rack lying outside the house and brought it inside. Eugene stated, "I probably thought I could sell them or something, find some kind of use out of them." Eugene never saw his stepfather with the luggage rack nor did he ever see his stepfather around the car. For that matter, Eugene claimed that he did not know when the car arrived in his back yard nor did he even know the car was in his back yard.

On cross-examination, Eugene acknowledged that he had known the car was probably stolen. He further testified that his father had never threatened or harmed him, although Eugene did admit to talking to appellant's parole officer about illegal activity in the household. Eugene further denied speaking with appellant's parole officer in February 1993.

As a rebuttal witness, Vukmer then testified, over objection, that he spoke with Eugene on February 2, 1993. Eugene told Vukmer that appellant was terrorizing the household and spending rent money on substances other than household goods, and had threatened Eugene and thrown his stereo across the room.

Based on the foregoing, the jury found appellant guilty of receiving stolen property, a motor vehicle. Appellant further stipulated before the trial court to the specification of a prior crime of violence. The trial court then sentenced appellant to a term of incarceration of four to ten years. Appellant timely appeals, raising the following assignments of error for our review:

"I. The defendant was denied due process of law when the court overruled his motion to suppress evidence by reason of the search conducted by parole officers.

"II. The defendant was denied due process of law when the court did not grant a motion to suppress with respect to the unlawful search by the police officers for the city of Cleveland.

"III. The defendant was denied a fair trial when the prosecutor improperly cross-examined defense witness, Eugene Rodgers, on immaterial and inadmissible matters.

"IV. The defendant was denied a fair trial when the court permitted a rebuttal witness, Steve Vukmer, to testify concerning conversations with Eugene Rodgers which sought to bring out other bad acts of the defendant.

"V. The defendant was denied due process of law when he was not furnished discovery concerning alleged statements and the prosecutor was allowed to use these statements at trial.

"VI. The defendant was denied a fair trial by reason of improper argument by the prosecutor.

"VII. The defendant was denied due process when the court would not instruct upon the lesser included offense of possession of automobile parts.

"VIII. The defendant was denied due process of law when the jury was misinformed concerning critical elements of the offense and reasonable doubt.

"IX. The defendant was denied due process of law when the court refused to answer a jury question and responded it [*sic*] in a misleading manner.

"X. The defendant was denied due process of law when the court overruled motions for judgment of acquittal.

"XI. The defendant was denied effective assistance of counsel by reason of errors and omissions of counsel."

I

In appellant's first and second assignments of error, he argues that the trial court erred in overruling his motion to suppress. Appellant contends that both the parole officers and the police officers violated his Fourth Amendment right to be free from unreasonable searches and seizures.

It is well settled that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States* (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585; *State v. Sneed* (1992), 63 Ohio St.3d 3, 6–7, 584 N.E.2d 1160, 1165; see, also, *Arkansas v. Sanders* (1979), 442 U.S. 753, 759–760, 99 S.Ct. 2586, 2590–2591, 61 L.Ed.2d 235, 241–242. One such recognized exception is a search to which consent is voluntarily given. *United States v. Matlock* (1974), 415 U.S. 164, 165, 94 S.Ct. 988, 990, 39 L.Ed.2d 242, 246; *Sneed, supra.*

It is further well settled that consent to a warrantless search will not be held invalid nor the resulting search unreasonable when one with authority over the premises voluntarily permits the search. *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854; *Sneed, supra; State v. Morris* (1988), 48 Ohio App.3d 137, 548 N.E.2d 969, paragraph two of the syllabus. The Fourth Amendment protection against unreasonable searches and seizures is less stringent, however, when applied to probationers or parolees if a warrantless search is conducted pursuant to a valid state regulation. *Griffin v. Wisconsin* (1987), 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709; *Latta v. Fitzharris* (C.A.9, 1975), 521 F.2d 246, 250.

■ In the present case, it is undisputed that appellant agreed to the rules and regulations contained on the conditional release form, which he had signed on two separate occasions. In the conditional release form, appellant consented "to a search without warrant of my person, my motor vehicle, or my place of residence by a parole officer at any time." Such conditions to probation or parole are clearly related to the "interests of doing justice, rehabilitating the offender, and insuring his good behavior." *State v. Jones* (1990), 49 Ohio St.3d 51, 53, 550 N.E.2d 469, 470. Moreover, a consensual search pursuant to such conditions and regulations has been upheld as being an exception to the warrant requirement. See *State v. Carter* (June 28, 1993), Stark App. No. CA–9102, unreported, 1993 WL 274293.

■ Finally, it is undisputed that appellant readily gave Vukmer and McAllister permission to enter the household. There is absolutely no evidence of implicit or explicit coercion. Cf. *United States v. Winsor* (C.A.9, 1988), 846 F.2d 1569, 1573, fn. 3. Once lawfully inside, Vukmer, the sole witness to testify at the suppression hearing, testified that the automobile parts, including the luggage rack, were lying around in plain view. Vukmer's observations of the automobile parts scattered throughout the house, coupled with the stripped-down condition of the automobile in the back yard, provided sufficient evidence to investigate the VIN. *Horton v. California* (1990), 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112; *State v. Halczyszak* (1986), 25 Ohio St.3d 301, 25 OBR 360, 496 N.E.2d 925. Further, once he learned that the automobile was stolen, Vukmer had probable cause to arrest appellant. *Id.; State v. Gonzalez* (Aug. 18, 1994), Cuyahoga App. No. 66120, unreported, 1994 WL 449445.

Finally, appellant contends that while he may have consented to a search by his parole officers, he did not consent to a search by the police officers. Appellant's argument, however, flies in the face of the undisputed testimony that the parole officers conducted the actual search and found the incriminating evidence. In any event, it is well accepted that probation or parole officers frequently seek cooperation from the police in pursuit of their responsibilities. *United States v. Harper* (C.A.9, 1991), 928 F.2d 894, 897; *United States v. Butcher* (C.A.9, 1991), 926 F.2d 811, 815. There is absolutely no evidence that the parole search was used as a subterfuge for a criminal investigation otherwise lacking in probable cause. *United States v. Richardson* (C.A.9, 1988), 849 F.2d 439, 441.

Therefore, we conclude the trial court did not err in overruling appellant's motion to suppress evidence. The undisputed evidence at the suppression hearing clearly demonstrates that appellant freely and voluntarily consented to the parole officers' search pursuant to the conditions of his parole and that the

incriminating evidence, *i.e.,* the luggage rack and automobile, was discovered in plain view and properly seized.

Appellant's first and second assignments of error are overruled.

## II

In appellant's third assignment of error, he claims the trial court committed prejudicial error in allowing the prosecutor to elicit testimony from Eugene Rodgers that he had told appellant's parole officer that appellant was scaring and threatening him and his mother. Over objection, Eugene confirmed that he spoke to appellant's parole officer on one occasion, the school year before the incident, but denied that he had recently spoken with appellant's parole officer. Appellant contends that the prosecutor cross-examined Eugene on irrelevant and immaterial matters and that the prosecutor's questions prejudicially insinuated answers.

In questioning Eugene Rodgers, the prosecution attempted to impeach Eugene's credibility by showing that appellant, through threats and violence directed toward Eugene and his mother, had influenced Eugene's testimony. Evid.R. 611(B) permits cross-examination on "all relevant matters and matters affecting credibility." The scope and form of cross-examination are left to the sound discretion of the trial court. *State v. Green* (1993), 66 Ohio St.3d 141, 147, 609 N.E.2d 1253, 1259, citing *Alford v. United States* (1981), 282 U.S. 687, 691, 51 S.Ct. 218, 219, 75 L.Ed. 624, 627; *State v. Rapp* (1990), 67 Ohio App.3d 33, 585 N.E.2d 965.

A cross-examiner may ask a question if the examiner has a good faith belief that a factual predicate for the question exists. *State v. Gillard* (1988), 40 Ohio St.3d 226, 533 N.E.2d 272; *State v. Coulter* (1992), 75 Ohio App.3d 219, 598 N.E.2d 1324. Moreover, an adverse party may cross-examine a witness to show possible bias on the part of the witness that might affect his credibility. *State v. Simms* (1983), 9 Ohio App.3d 302, 9 OBR 549, 459 N.E.2d 1316.

Additionally, we agree that " '[r]elationships between a party and a witness are always relevant to a showing of bias, whether the relationship is based on ties of family * * *, enmity or fear.' " *United States v. Booty* (C.A.5, 1980), 621 F.2d 1291, 1299, fn. 26, quoting 3 Weinstein, Berger & McLaughlin, Weinstein's Evidence (1995), Section 607[03], 607–36 to 607–38.

In the present case, although appellant raised a general objection to the prosecutor's questioning of Eugene Rodgers, appellant failed to challenge the prosecutor's good faith basis for asking the challenged questions. Eugene admitted to speaking to Vukmer on one occasion and admitted that he had told

Vukmer that appellant had threatened him and his mother. Eugene denied speaking to Vukmer on a second occasion. Finally, Vukmer's rebuttal testimony, which confirmed that Eugene had spoken to him on two occasions, makes clear that the prosecutor had a factual basis for asking Eugene about his prior conversations with Vukmer.

We also note that appellant's reliance on *State v. Smidi* (1993), 88 Ohio App.3d 177, 623 N.E.2d 655, is misplaced. In *Smidi*, the prosecutor, by assuming facts incorporated into questions, had repeatedly placed before the jury matters not supported by the evidence, and the court found that the prosecutor had engaged in misconduct during closing argument. In the present case, the prosecutor properly inquired of Eugene whether he had told appellant's parole officer that appellant had threatened him and his mother.

Appellant's third assignment of error is overruled.

## III

In appellant's fourth assignment of error, appellant contends that the trial court committed prejudicial error in allowing Vukmer to testify, as a rebuttal witness, that Eugene Rodgers told him on February 2, 1993 that appellant was terrorizing the household and spending rent money on substances other than household goods, and had threatened him and thrown his stereo across the room. Vukmer was called as a witness to provide extrinsic evidence to impeach Eugene's prior testimony denying that he had told that to Vukmer.

Evid.R. 613 provides:

"(A) Examining Witness Concerning Prior Statement. In examining a witness concerning a prior statement made by him, whether written or not, the statement need not be shown nor its contents disclosed to him at that time, but on request the same shall be shown or disclosed to opposing counsel.

"(B) Extrinsic Evidence of Prior Inconsistent Statement of Witness. Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded a prior opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Rule 801(D)(2)."

In *State v. Riggins* (1986), 35 Ohio App.3d 1, 3, 519 N.E.2d 397, 401, this court explained:

"Evid.R. 613 provides for the admission of a prior inconsistent statement for impeachment purposes. Where the prior statement was made under oath and in an adversary proceeding, it is admissible for its truth. Evid.R. 801(D)(1)(a).

Evid.R. 613(B) requires that a witness be afforded an opportunity to explain or deny a prior inconsistent statement before extrinsic evidence of that statement is admissible. If a witness denies making the statement, a proper foundation has been laid, and the evidence does not relate to a collateral matter, extrinsic evidence is admissible. Evid.R. 613(B). See *Byomin v. Alvis* (1959), 169 Ohio St. 395, 8 O.O.2d 420, 159 N.E.2d 897." See, also, *State v. Washington* (Mar. 24, 1994), Cuyahoga App. No. 65007, unreported, 1994 WL 97700; *State v. Montes* (1993), 92 Ohio App.3d 539, 636 N.E.2d 378; and *State v. Crim* (Sept. 2, 1993), Cuyahoga App. No. 63439, unreported, 1993 WL 335467.

In the present case, we find that a proper foundation for Eugene's prior inconsistent statement was laid by the prosecution. During cross-examination, Eugene admitted to speaking with Vukmer the school year before the incident but denied speaking with Vukmer in February 1993. Eugene further denied, on cross-examination, making the statements to which Vukmer testified to on rebuttal. Thus, extrinsic evidence of Eugene's prior inconsistent statement was admissible to impeach his testimony. Moreover, we agree with the state that failure to put Vukmer on the witness stand might have jeopardized the state's case on appeal by calling into question the prosecutor's good faith basis for asking Eugene on cross-examination about his prior inconsistent statements. See *State v. Girts* (July 28, 1994), Cuyahoga App. No. 65750, unreported, 1994 WL 393678.

Appellant's fourth assignment of error is, therefore, overruled.

## IV

In appellant's fifth assignment of error, appellant argues that he was denied due process of law when he was not furnished discovery concerning statements given to his parole officer. The record before this court reveals that appellant's counsel objected to the prosecutor's opening statement, wherein the prosecutor referred to appellant's statements to Vukmer that the toys and barbecue pit next to the automobile in question were in appellant's back yard. Appellant declined the trial court's offer of a continuance to investigate these statements and further did not object to these statements during trial.

Pursuant to Crim.R. 16(E), the imposition of sanctions for discovery violations is left to the sound discretion of the trial court. *State v. Adkins* (1992), 80 Ohio App.3d 211, 608 N.E.2d 1152; *State v. Harcourt* (1988), 46 Ohio App.3d 52, 546 N.E.2d 214. In the present case, the trial court offered appellant's counsel a two-week continuance to investigate the statements. Appellant's counsel declined and further failed to object to the statements during trial. Thus, it cannot be said that the trial court abused its discretion in admitting the statements into evidence. Finally, we note that appellant's statements were not made during a custodial interrogation and were, therefore, properly admitted. *Stansbury v.*

*California* (1994), 511 U.S. ——, 114 S.Ct. 1526, 128 L.Ed.2d 293; *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; *State v. Spinks* (1992), 79 Ohio App.3d 720, 607 N.E.2d 1130.

Appellant's fifth assignment of error is overruled.

V

Appellant next asserts, through his sixth assignment of error, that he was denied a fair trial through prosecutorial misconduct. Specifically, appellant complains that the prosecutor improperly opined that he suspected appellant was "running a chop shop out of that house," that the defense was setting up and trying to hide behind a "smoke screen," that the jury should not be "fooled there for a minute just because the guy is in the can that he is not getting word to his son," and that the jury should not "be fooled for a minute that the son wouldn't be terrified" by appellant.

▮ Because none of the complained-of instances of prosecutorial misconduct was objected to, we review this assignment of error for plain error, Crim.R. 52(B), and are reminded that "notice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Landrum* (1990), 53 Ohio St.3d 107, 111, 559 N.E.2d 710, 717.

▮ The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant. *State v. Lott* (1990), 51 Ohio St.3d 160, 165, 555 N.E.2d 293, 299–300; *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 14 OBR 317, 318–319, 470 N.E.2d 883, 885. In making this determination, an appellate court should consider several factors: (1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant. *State v. Bell* (Mar. 18, 1993), Cuyahoga App. No. 61827, unreported, at 29–30, 1993 WL 76859; *State v. Barnes* (Oct. 27, 1988), Cuyahoga App. No. 54527, unreported, 1988 WL 114487; *State v. Heredia* (Sep. 24, 1987), Cuyahoga App. No. 52705, unreported, 1987 WL 17626; *State v. Hill* (1977), 52 Ohio App.2d 393, 396, 6 O.O.3d 436, 438, 370 N.E.2d 775, 778–779. An appellate court should also consider whether the misconduct was an isolated incident in an otherwise properly tried case. *State v. Keenan* (1993), 66 Ohio St.3d 402, 410, 613 N.E.2d 203, 209–210. Misconduct of a prosecutor at trial will not be considered grounds for reversal unless the conduct deprives the defendant of a fair trial. *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 514 N.E.2d 394; *State v. Maurer* (1984), 15 Ohio St.3d 239, 15 OBR 379, 473 N.E.2d 768. The touchstone of analysis is "the

fairness of the trial, not the culpability of the prosecutor." *State v. Underwood* (1991), 73 Ohio App.3d 834, 840–841, 598 N.E.2d 822, 826, citing *Smith v. Phillips* (1982), 455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78, 87–88.

A prosecutor is afforded wide latitude in closing arguments. *State v. Jacks* (1989), 63 Ohio App.3d 200, 210, 578 N.E.2d 512, 518–519. However, a prosecutor should not express his personal belief or opinion as to the credibility of a witness or as to the guilt of an accused or allude to matters that are not supported by admissible evidence. *Smith,* 14 Ohio St.3d at 14, 14 OBR at 318–319, 470 N.E.2d at 885. By informing the jury that appellant was suspected of running a chop shop, the prosecutor improperly drew an inference on matters not supported by the evidence and improperly rendered an opinion as to appellant's guilt. While we believe the evidence supports a conclusion that appellant knowingly received the stolen automobile, the prosecutor's comment that appellant ran a chop shop went beyond the evidence in the record. There was no evidence that other automobile parts were stolen nor was it contended that they were stolen. Therefore, by drawing an inference not supported by the evidence, the prosecutor improperly rendered an opinion on appellant's guilt on a matter for which appellant was not charged.

Additionally, in opining that the defense was setting up and hiding behind a smoke screen, the prosecutor improperly intimated that defense counsel "had suborned perjury by manufacturing, conceiving and fashioning lies." *Smith,* 14 Ohio St.3d at 14, 14 OBR at 318, 470 N.E.2d at 885; see, also, *Keenan, supra.* We note that the prosecutor's comment is very similar to those found to be prejudicial in the above cases, but add that the instant comment is isolated.

Last, we note that the prosecutor's comment that Eugene Rodgers was terrified by appellant is a proper comment rationally drawn from and supported by the evidence of record. *State v. Tyler* (1990), 50 Ohio St.3d 24, 41, 553 N.E.2d 576, 595–596. In making that comment, the prosecutor referred to Eugene's testimony wherein he acknowledged having spoken with appellant's parole officer, Vukmer, and related that appellant was terrorizing him and his mother.

In considering the two aforementioned instances of improper argument in light of the entire case, *Maurer, supra,* we believe, beyond a reasonable doubt, that the jury would have found appellant guilty absent the prosecutor's remarks. *United States v. Hasting* (1983), 461 U.S. 499, 510–511, 103 S.Ct. 1974, 1981–1982, 76 L.Ed.2d 96, 107. The record before this court leaves no doubt that appellant knowingly received and/or retained the stolen automobile in question. The automobile's luggage rack was found in appellant's house, along with numerous other automobile parts, and the automobile in question was found within five feet of appellant's house. Finally, appellant's sole witness, Eugene Rodgers, was

thoroughly impeached on cross-examination. Eugene admitted he knew the luggage rack was probably stolen but denied knowing that the automobile was in his back yard. Eugene further admitted to having spoken with appellant's parole officer and having told the parole officer that appellant was threatening him and his mother. Thus, the prosecutor's improper comments concerning an alleged chop shop and the defense's smoke screen are harmless beyond a reasonable doubt. *Landrum, supra.*

Appellant's sixth assignment of error is not well taken.

## VI

Appellant's seventh, eighth and ninth assignments of error contest the propriety of the jury instructions.

Appellant, through his seventh assignment of error, argues that he was denied due process of law when the court would not instruct the jury on the lesser included offense of possession of stolen automobile parts.

It is the duty of a trial judge in a jury trial to state all matters of law necessary for the information of the jury in reaching its verdict. R.C. 2945.11; *State v. Perryman* (1976), 49 Ohio St.2d 14, 29, 3 O.O.3d 8, 17, 358 N.E.2d 1040, 1049–1050; *State v. Spinks* (1992), 79 Ohio App.3d 720, 607 N.E.2d 1130. In a criminal case, if requested special instructions to the jury are correct, pertinent and timely presented, they must be included, at least in substance, in the general charge. *State v. McCarthy* (1992), 65 Ohio St.3d 589, 593, 605 N.E.2d 911, 913–914; *Cincinnati v. Epperson* (1969), 20 Ohio St.2d 59, 49 O.O.2d 342, 253 N.E.2d 785, paragraph one of the syllabus.

In the present case, appellant requested the court to charge the jury on the lesser included offense of receiving stolen property—as appellant's counsel put it, "Just the parts, not the car." Apparently, appellant hoped to reduce the degree of the offense to a misdemeanor of the first degree by inviting a jury finding that the value of the property, *i.e.,* the luggage rack, was less than $300. See R.C. 2913.51(B). As indicted, appellant faced conviction on a felony of the third degree for receiving stolen property, *i.e.,* the motor vehicle. *Id.*

A charge on a lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense. *State v. Thomas* (1988), 40 Ohio St.3d 213, 533 N.E.2d 286, paragraph two of the syllabus; *State v. Radziewicz* (June 6, 1991), Cuyahoga App. No. 58650, unreported, 1991 WL 97326. If the evidence adduced on behalf of the defense is such that if accepted by the trier of fact, it would constitute a complete defense to all substantive elements of the crime charged, the trier of fact will not be permitted

to consider a lesser included offense. *State v. Sage* (1987), 31 Ohio St.3d 173, 178, 31 OBR 375, 378–379, 510 N.E.2d 343, 347; *State v. Solomon* (1981), 66 Ohio St.2d 214, 20 O.O.3d 213, 421 N.E.2d 139, paragraph two of the syllabus; see, also, *State v. Purdue* (Sept. 2, 1988), Wood App. No. 87–CR–232, unreported, 1988 WL 91339, wherein the court of appeals held that the defendant was not entitled to a jury instruction on the lesser misdemeanor offense of receiving stolen property with regard to cash found on his person where his defense was a complete lack of knowledge of the money and credit cards for which he was indicted.

As in *Purdue*, appellant's defense to the charge of receiving stolen property was that he lacked any knowledge of the existence of the automobile in his back yard or of the existence of the luggage rack found in his kitchen. Consequently, because his lack of knowledge would constitute a complete defense to the crime charged, as well as to the lesser included offense, a jury charge on receiving stolen property for the luggage rack would have been inappropriate as inviting the jury to reach a compromise verdict. Thus, appellant's seventh assignment of error is without merit.

Next, appellant argues, through his eighth assignment of error, that he was denied due process of law when the trial court misinformed the jury on a critical element of the offense and on reasonable doubt. At trial, however, appellant's only objection to the court's jury instructions was to request a charge on the lesser included misdemeanor offense of receiving the automobile parts. Crim.R. 30. Consequently, we review appellant's eighth assignment of error for plain error. Crim.R. 52(B). In order for an unobjected-to jury instruction to rise to the level of plain error, it must appear on the face of the record not only that error was committed but that, except for the error, the result of the trial clearly would have been otherwise and that not to consider the error would result in a clear miscarriage of justice. *State v. Underwood* (1983), 3 Ohio St.3d 12, 3 OBR 360, 444 N.E.2d 1332; *State v. Cooperrider* (1983), 4 Ohio St.3d 226, 4 OBR 580, 448 N.E.2d 452.

Appellant first contends that the trial court's instruction, as taken from 4 Ohio Jury Instructions (1994), Section 513.51(4), improperly transformed the crime of receiving stolen property into one requiring a mere showing of negligence on the part of the defendant.[1] This court and other Ohio courts have

---

1. The trial court instructed the jury as follows:

"In determining whether the defendant had reasonable cause to believe that the property was obtained through a theft offense you must put yourself in the position of this defendant, with his knowledge, lack of knowledge, and under the circumstances and conditions that surrounded him at the time.

specifically sanctioned the constitutionality, specificity and clarity of complained-of instructions as relating to the element of "reasonable cause to believe." See *State v. Hicks* (Aug. 18, 1988), Cuyahoga App. No. 54219, unreported, 1988 WL 88342; *State v. York* (Oct. 24, 1985), Cuyahoga App. No. 49952, unreported, 1985 WL 8502; *State v. Gregory* (Aug. 21, 1992), Lucas App. No. L–91–198, unreported, 1992 WL 206819; *State v. Skorvanek* (June 27, 1990), Wayne App. No. 2545, unreported, 1990 WL 94226; and *State v. Burch* (Nov. 15, 1988), Wyandot App. No. 16–86–11, unreported, 1988 WL 122479. Accordingly, we conclude the trial court did not err in giving the cited jury instruction.

Next, without providing a citation to the record, see App.R. 16, appellant contends the trial court improperly diluted the statutory definition of "beyond a reasonable doubt." [2] See R.C. 2901.05(D). A similar amplification of the statutory definition of "beyond a reasonable doubt" was found to be harmless error in *State v. Van Gundy* (1992), 64 Ohio St.3d 230, 235–236, 594 N.E.2d 604, 608. Because the instant amplification is nearly identical to that in *Van Gundy*, appellant's argument lacks merit. *State v. DiNickle* (Dec. 3, 1993), Ashtabula App. No. 93–A–1771, unreported, 1993 WL 545142. Accordingly, appellant's eighth assignment of error is overruled.

Finally, in appellant's ninth assignment of error, appellant argues that the trial court gave an improper and prejudicial response to a jury question. During deliberations, the jury asked the trial court for the legal definition of the word "retaining" and asked whether the failure to report constitutes retaining. The trial court reread the definition of "retaining" but added:

"As to the second part of your question, ladies and gentlemen, 'Failure to report, does that constitute retaining,' that's up to you.

"You, the jurors, are the sole judges of the facts in this case. It would be improper for the Court to respond to that question."

Although appellant failed to object at trial, appellant now complains that the trial court's response to the jury inquiry was prejudicial error, since failure to

"You must consider the conduct or the persons involved and determine if their acts and words and all the surrounding circumstances would have caused a person of ordinary prudence and care to believe that the property had been obtained through the commission of a theft offense."

2. After giving the statutory definition of "beyond a reasonable doubt," the trial court stated:
"Now, if after a full and impartial consideration of all of the evidence you are firmly convinced of the truth of the charge, the State has proved its case beyond a reasonable doubt. And in that event you must find the defendant guilty.
"However, if after a full and impartial consideration of all of the evidence you are not firmly convinced of the truth of the charge, the State has not proved its case beyond a reasonable doubt and in that event you must find the defendant not guilty."

report a crime constitutes a separate offense. See R.C. 2921.22. While failure to report a crime does constitute a separate offense, we believe, in the context of the court's overall charge, that the court's response to the jury's question does not amount to plain error. The trial court correctly charged the jury on each element of receiving stolen property and also reread the correct instruction on the legal definition of "retaining." Therefore, we cannot say that but for the error the result of the trial clearly would have been otherwise and that not to consider the error would result in a clear miscarriage of justice. *Underwood* and *Cooperrider, supra.* Appellant's ninth assignment of error is, accordingly, overruled.

## VII

In appellant's tenth assignment of error, appellant argues that the trial court denied him due process of law by overruling his motion for acquittal.

Crim.R. 29(A) provides:

"The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."

The standard of review with regard to the sufficiency of evidence is set forth in *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus:

"Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." See, also, *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 23, 514 N.E.2d 394, 399–400; *State v. Davis* (1988), 49 Ohio App.3d 109, 550 N.E.2d 966.

*Bridgeman* must be interpreted in light of the sufficiency test as outlined in *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, in which the Ohio Supreme Court held:

"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime

proven beyond a reasonable doubt. (*Jackson v. Virginia* [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)"

■ A review of the evidence leads this court to conclude that the trial court properly overruled appellant's motion for acquittal. R.C. 2913.51 states that "[n]o person shall receive, retain, or dispose of property of another, knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense."

Appellant chiefly complains that there is no evidence that appellant "touched, handled or did anything with the car." A person may be convicted of receiving stolen property based on actual or constructive possession of the property. *State v. Hankerson* (1982), 70 Ohio St.2d 87, 24 O.O.3d 155, 434 N.E.2d 1362; *Criss v. Kent* (C.A.6, 1988), 867 F.2d 259. Constructive possession exists when an individual knowingly exercises dominion or control over an object, even though the object may not be within his immediate physical possession. *Hankerson, supra.*

The evidence adduced at trial indicates that the vehicle in question, which was stipulated to having been stolen, was found in appellant's back yard, a mere five feet from his house, in a substantially stripped-down condition, while numerous automobile parts, including a luggage rack which perfectly fitted the automobile in question, were found scattered about the inside of appellant's house. Thus, sufficient direct and circumstantial evidence exists to support appellant's conviction of receiving stolen property, a motor vehicle, in violation of R.C. 2913.51.

Appellant's tenth assignment of error lacks merit.

## VIII

In appellant's final assignment of error, appellant complains of several instances of alleged ineffective assistance of counsel.

■ In order to succeed on a claim of ineffective assistance of counsel, appellant must satisfy the following two-prong test:

"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693.

The test enunciated in *Strickland* is essentially the same as the one adopted by the Ohio Supreme Court in *State v. Hester* (1976), 45 Ohio St.2d 71, 79, 74 O.O.2d 156, 160–161, 341 N.E.2d 304, 309–310, and *State v. Lytle* (1976), 48 Ohio St.2d 391, 395, 2 O.O.3d 495, 497, 358 N.E.2d 623, 626. See, also, *State v. Xie* (1992), 62 Ohio St.3d 521, 584 N.E.2d 715; *State v. Bradley* (1989), 42 Ohio St.3d 136, 141–142, 538 N.E.2d 373, 378–380.

A presumption that a properly licensed attorney executes his duty in an ethical and competent manner must be applied to any evaluation of a claim of ineffective assistance of counsel. *State v. Smith* (1985), 17 Ohio St.3d 98, 17 OBR 219, 477 N.E.2d 1128; *State v. Lytle, supra; Vaughn v. Maxwell* (1965), 2 Ohio St.2d 299, 31 O.O.2d 567, 209 N.E.2d 164. The burden of establishing a claim of ineffective assistance of counsel is on the defendant. *Smith,* 17 Ohio St.3d at 100, 17 OBR at 220–221, 477 N.E.2d at 1130–1131; *State v. Arvanitis* (1986), 36 Ohio App.3d 213, 219, 522 N.E.2d 1089, 1095.

Judicial scrutiny of counsel's performance must be highly deferential. The defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694–695. A defendant is not deprived of effective assistance of counsel when counsel chooses, for strategic reasons, not to pursue every possible trial tactic. *State v. Brown* (1988), 38 Ohio St.3d 305, 319, 528 N.E.2d 523, 539–540.

Appellant first complains that he received ineffective assistance of counsel when counsel agreed to stipulate to a prior felony conviction based on a computer printout showing that appellant had pleaded guilty to aggravated robbery (count one of the 1983 indictment) in violation of R.C. 2911.11. Appellant states that because the trial court merely sentenced appellant to six months incarceration and a $500 fine, both suspended, it is obvious that appellant pleaded guilty only to petty theft (the second count in the indictment). However, sentencing irregularities notwithstanding, see R.C. 2929.11, this court cannot say, based on the record before us, that the decision to stipulate to appellant's prior felony conviction, as evidenced by the computer printout, was not a matter of sound trial strategy. *State v. Brown,* 38 Ohio St.3d at 319, 528 N.E.2d at 539–540; *State v. Clayton* (1980), 62 Ohio St.2d 45, 16 O.O.3d 35, 402 N.E.2d 1189; *State v. Catlin* (1990), 56 Ohio App.3d 75, 564 N.E.2d 750. Based on the record before us, we must presume that appellant received effective assistance of counsel and that counsel had a basis to stipulate that appellant had pleaded guilty to and had been convicted of aggravated burglary in 1983. *Smith* and *Lytle, supra.* The record before this court simply does not support the conclusion that appellant was not convicted of aggravated burglary. Thus, based on the totality

of the circumstances, this court cannot say that the decision reached by the trial court to accept the stipulation would have been different absent the alleged error. *Strickland,* 466 U.S. at 695–696, 104 S.Ct. at 2068–2069, 80 L.Ed.2d at 698–699.

 Appellant next complains that his trial counsel was ineffective for failing to object to inadmissible testimony. Appellant argues that state's witnesses' testimony concerning the LEADS computer check, which revealed that the automobile in question was stolen, was inadmissible hearsay. However, the testimony was not offered to show that the automobile was, in fact, stolen but was offered to explain the conduct of Vukmer and McAllister, as well as the police officers, in placing appellant under arrest. The testimony, therefore, was not inadmissible hearsay. *State v. Cantlebarry* (1990), 69 Ohio App.3d 216, 590 N.E.2d 342; and *State v. Price* (1992), 80 Ohio App.3d 108, 608 N.E.2d 1088.

Moreover, the effect of the testimony was null since appellant's counsel stipulated that the car was, indeed, stolen. Accordingly, trial counsel was not ineffective for failing to object to admissible testimony. *State v. Dozanti* (1994), 71 Ohio St.3d 177, 642 N.E.2d 1089.

 Finally, appellant complains that trial counsel was ineffective for stipulating that the automobile in question was stolen. Again, however, there is nothing in the record to suggest that counsel's decision to agree to the stipulation was anything but sound trial strategy. We must presume that counsel's performance was effective and that counsel had a reasonable basis to stipulate that the car was stolen. *Smith* and *Lytle, supra.* Finally, we note that there is no showing that counsel's decision prejudiced appellant's defense. *Strickland, supra.*

Accordingly, appellant's final assignment of error is overruled.

*Judgment affirmed.*

BLACKMON, P.J., and PRYATEL, J., concur.

AUGUST PRYATEL, J., retired, of the Eighth Appellate District, sitting by assignment.