OPINION
{¶ 1} Defendant, Richard Buckingham, appeals from his conviction and sentence for felonious assault.
 {¶ 2} Defendant served two tours of duty in Vietnam. As a result of those experiences, Defendant suffers from chronic post traumatic stress disorder (PTSD), with disassociative flashbacks.
 {¶ 3} On Veteran's Day, November 11, 2000, Defendant met Mary Andrews and Diana Blackburn at Doc's Tavern in Dayton. Defendant and the two women then went to other bars, including Webster Station, before going to Defendant's house trailer.
 {¶ 4} While at Defendant's trailer, Blackburn went to the restroom. Meanwhile, Defendant forced Andrews to sit in a chair and held a knife against her throat, telling her to not move. When Blackburn came out of the restroom she saw Defendant holding a knife to Andrews' throat. Defendant ordered Blackburn to get down on the floor on her hands and knees. Blackburn asked Defendant if he was joking. Defendant responded that he was not joking.
 {¶ 5} Andrews and Blackburn both managed somehow to escape from Defendant and flee out the door of the trailer. The two women ran down the street, screaming for help. Defendant pursued them but without the knife that he had left inside his trailer. When the women reached the trailer of Steven Williams, he advised Defendant that he had a gun and had already called police. At that point Defendant got into his car and drove away. Defendant was apprehended a short time later about three miles away. Defendant gave police several inconsistent stories about what had happened in the trailer.
 {¶ 6} Defendant was indicted on one count of felonious assault, R.C. 2903.11(A)(2), and two counts of Abduction, R.C. 2905.02(A)((2). Defendant filed a plea of not guilty by reason of insanity, and requested both competency and sanity evaluations. Two sanity evaluations were conducted: one by Dr. Susan Perry-Dyer and the other by Dr. John P. Wilson.
 {¶ 7} Defendant waived a jury trial and the matter proceeded to a trial before the court. The State dismissed both abduction charges, leaving only the felonious assault charge for trial. At trial, the parties stipulated Defendant's competency to stand trial. The parties also stipulated to the police reports as to the facts in this case, and to the qualifications of each parties' expert witness.
 {¶ 8} The sole issue at trial was whether Defendant was insane at the time of his offense. Defendant claimed that he was then experiencing a disassociative flashback to a traumatic combat incident he experienced in Vietnam that rendered him unable to discern right from wrong. Each party's expert witness gave contradictory opinions about that issue.
 {¶ 9} At the conclusion of trial, the trial court elected to believe the opinion offered by the State's expert over Defendant's expert, and thus found that Defendant had failed to prove insanity by a preponderance of the evidence. The trial court found Defendant guilty and sentenced him to the maximum sentence of eight years imprisonment.
 {¶ 10} Defendant has timely appealed to this court from his conviction and sentence.
 First Assignment of Error {¶ 11} ""Appellant was denied his right to effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Article I of the Ohio Constitution."
 Second assignment of Error {¶ 12} "The appellant was denied effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Article I of the Ohio Constitution as trial counsel failed to object to admissibility of the state of Ohio's expert opinion."
 {¶ 13} In Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, the United States Supreme Court set forth the standard for judging claims of ineffective assistance of trial counsel:
 {¶ 14} "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or setting aside of a death sentence requires that the defendant show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial.
 {¶ 15} "The proper standard for judging attorney performance is that of reasonably effective assistance, considering all the circumstances. When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.
 {¶ 16} "With regard to the required showing of prejudice, the proper standard requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." Syllabus, 2. Accord: State v.Bradley (1989), 42 Ohio St.3d 136.
 Waiving Right to Jury Trial {¶ 17} Defendant asserts in conclusory fashion, without argument or citation to any authority, that his trial counsel was ineffective for allowing him to waive his right to a jury trial. Defendant fails to explain why that decision constitutes deficient performance by defense counsel, much less how it prejudiced Defendant. Conclusory assertions are insufficient to demonstrate ineffective assistance of counsel underStrickland.
 Failure to Present Robert McCormack as a Witness {¶ 18} Defendant alleges that his trial counsel was ineffective for failing to call Robert McCormack as a defense witness. McCormack is a counselor at the Veteran's Administration who had been treating Defendant for PTSD in the days and weeks preceding the crime. According to Defendant, McCormack would have testified that Defendant exhibited symptoms of PTSD days and weeks before this crime occurred. That information would have contradicted the claim by the State's expert, Dr. Dyer, that Defendant's PTSD was under control at the time of the crime, and would have bolstered Defendant's claim that he suffered from a disassociative flashback at the time he attacked Andrews.
 {¶ 19} Although McCormack did not testify at Defendant's trial, both Dr. Moran and Dr. Wilson did testify about Defendant's ongoing problems with PTSD, including flashbacks, between May and November 11, 2000, as reported in McCormack's notes and reports. This information included the fact that Defendant experienced flashbacks on November 8 and 10, before committing this offense on November 11. Thus, information that Defendant experienced PTSD symptoms, including flashbacks, in the days and weeks preceding this crime was presented to the trier of facts. Defendant has failed to demonstrate any prejudice resulting from counsel's failure to present testimony by McCormack on that same issue. Even had counsel presented McCormack's testimony, there is no reasonable probability of a different outcome because McCormack's testimony would be largely cumulative to other evidence already presented. Ineffective assistance of counsel has not been demonstrated.
 Stipulating to Facts in Police Report {¶ 20} Defendant argues that his counsel was ineffective because he stipulated the facts regarding commission of this offense contained in the police report. According to Defendant, effective cross-examination of the crime victims could have established that there was no motive or explanation, sexual or otherwise, for this crime to contradict Defendant's claim that he was experiencing a disassociative flashback to a battle in Vietnam that rendered him incapable of differentiating right from wrong. Moreover, Defendant claims that the victims could have testified to irrational statements Defendant made during the crime.
 {¶ 21} The record in this case fails to even suggest, much less demonstrate, that Defendant made any irrational statements while committing this crime. Defendant's claim that effective cross-examination of the victims would have supported his insanity defense is pure speculation. To the extent that this ineffective counsel claim depends upon evidence outside the record, post-conviction proceedings pursuant to R.C. 2953.21 is the appropriate procedural vehicle to litigate this claim. State v. Gibson (1980), 69 Ohio App.2d 91.
 {¶ 22} Moreover, deficient performance by defense counsel has not been demonstrated. There was no legitimate factual dispute in this case regarding the offense that occurred and who committed it. The only issue was whether at the time Defendant committed this offense, he did not know that his conduct was wrong (i.e. was insane). Counsel's decision to stipulate the facts establishing commission of the offense was a matter of trial strategy. State v. Braxton (1995), 102 Ohio App.3d 28. Even debatable trial tactics do not establish ineffective assistance of counsel. State v. Clayton (1980), 62 Ohio St.2d 45.
 Testimony by Defense Expert Witness {¶ 23} Defendant alleges that his counsel was ineffective because he failed to properly present the testimony of the defense expert witness, Dr. Wilson.
 {¶ 24} First, Defendant complains because counsel stipulated the qualifications of his expert witness. Both parties in this case stipulated the qualifications of each other's expert witness. Defendant argues that in a case such as this where the trier of fact was presented with conflicting opinions by the expert witness for the State and defense, defense counsel should have shown why his expert was superior to the State's expert. Defendant claims that could have been accomplished by presenting Dr. Wilson's credentials, which demonstrate that he specializes in the study and treatment of PTSD.
 {¶ 25} Examination of this record reveals that during cross-examination of the State's expert, Dr. Dyer, defense counsel emphasized Dr. Dyer's limited experience with PTSD. Moreover, during direct examination of the defense expert, Dr. Wilson, defense counsel elicited Dr. Wilson's extensive experience in studying and treating PTSD. Finally, in closing argument defense counsel compared and contrasted Dr. Wilson's extensive experience with PTSD, the substantial amount of time he spent interviewing Defendant, and the detailed nature of Dr. Wilson's report, with Dr. Dyer's lack of experience in this area, the relatively small amount of time she spent interviewing Defendant, and the generic, abbreviated nature of her report. Given that, Defendant has failed to demonstrate that had defense counsel presented Dr. Wilson's qualifications to the trial court rather than stipulating to them, there exists a reasonable probability that Defendant would have been acquitted.
 {¶ 26} Defendant also complains that counsel was ineffective because he did not seek admission of Dr. Wilson's written report. However, Dr. Wilson testified to the contents of his report. Defense counsel's failure to present cumulative evidence does not constitute deficient performance. Moreover, Defendant has failed to explain how or why he was prejudiced by counsel's failure to admit Dr. Wilson's report.
 {¶ 27} Finally, Defendant complains that his counsel was ineffective because he failed to obtain the raw data from the tests administered to Defendant by Dr. Dyer so that Dr. Wilson could examine that material and refute the results and conclusions reached by Dr. Dyer that Defendant was exaggerating his problems with PTSD. We do not know what those materials show. To the extent this claim of ineffective counsel depends upon facts outside the record, it must be litigated via post-conviction relief proceedings. State v. Gibson, supra.
 Failure to Object to Dr. Dyer's Qualifications {¶ 28} Defendant argues that his counsel was ineffective because he failed to object to Dr. Dyer's qualifications to testify as an expert witness and instead stipulated her qualifications. According to Defendant, it is unclear from the record whether Dr. Dyer is qualified to testify as an expert regarding PTSD.
 {¶ 29} Evid.R. 702 governs testimony by expert witnesses and provides:
 {¶ 30} "A witness may testify as an expert if all of the following apply:
 {¶ 31} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 32} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 33} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
 {¶ 34} "(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
 {¶ 35} "(2) The design of the procedure, test, or experiment reliably implements the theory;
 {¶ 36} "(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."
 {¶ 37} Each party in this case stipulated the qualifications of the other party's expert witness. Thus, those qualifications are not included in this record. To the extent Defendant's claim of ineffective counsel relies upon evidence outside this record, i.e. the qualifications of Dr. Dyer, that claim must be litigated via post-conviction relief proceedings. State v. Gibson, supra.
 {¶ 38} The sole issue in this case was whether Defendant was insane at the time he committed this offense. In that regard Dr. Dyer's work over the years as a forensic psychologist for the Forensic Psychiatry Center for Western Ohio, conducting numerous sanity evaluations and testifying as an expert in the local courts is well known. Dr. Dyer's training and experience is clearly sufficient to qualify her as an expert witness on the issue of whether Defendant was insane at the time he committed this offense. Defense counsel's stipulation to Dr. Dyer's qualifications in order to save time and allow the proceedings to address the sole issue to be decided, Defendant's sanity, did not constitute deficient performance.
 Scientific Validity/Reliability of Dr. Dyer's Testimony {¶ 39} Defendant claims that his counsel was ineffective for having failed to object to Dr. Dyer's opinion and testimony because it was not based upon reasoning and methodology that is scientifically valid and reliable when judged by the Daubert standard. See: Daubert v. MerrillDow Pharmaceuticals (1993), 509 U.S. 579, 113 S.Ct. 2786.
 {¶ 40} In Miller v. Bike Athletic Co., 80 Ohio St.3d 607,1998-Ohio-178, the Ohio Supreme Court adopted the test set forth by the United States Supreme Court in Daubert for determining the reliability and admissibility of scientific evidence. "[In] evaluating the reliability of scientific evidence, several factors are to be considered: (1) whether the theory or technique has been tested, (2) whether it has been subjected to peer review, (3) whether there is a known or potential rate of error, and (4) whether the methodology used has gained general acceptance." Miller, at 611.
 {¶ 41} Specifically, Defendant complains that Dr. Dyer failed to reference norms or published data and literature by peer reviewed science that would have shown that Defendant's scores on the portion of the MMPI-2 test that measure PTSD, and his scores on the clinical scales, were consistent with severe PTSD and proneness to disassociation.
 {¶ 42} Dr. Dyer did not dispute, however, that Defendant suffers from chronic PTSD. To the contrary, she agreed that he does and that he has experienced disassociative flashbacks in the past. Dr. Dyer's opinion that Defendant was not insane at the time he committed this offense was based upon her belief that at that particular time Defendant was not experiencing one of those flashbacks. Whether Defendant was or was not experiencing a flashback at any particular time would not be reflected in the results of the MMPI test. Thus, defense counsel's failure to object to the lack of any reference to scientific literature that would have shown that Defendant's scores on the MMPI-2 test were consistent with having PTSD, does not constitute deficient performance, much less result in prejudice as defined by Strickland. Ineffective assistance of counsel has not been demonstrated.
 {¶ 43} The first and second assignments of error are overruled.
 Third Assignment of Error {¶ 44} "The trial court's decision finding that appellant failed to prove by a preponderance of the evidence that he was insane at the time of the offense was against the manifest weight of the evidence."
 {¶ 45} In finding Defendant guilty of felonious assault, the trial court found that Defendant had failed to prove by a preponderance of the evidence that he was insane at the time of the offense. In making that finding the trial court chose to believe the opinion of the State's expert, Dr. Dyer, that at the time of the crime Defendant was not experiencing a disassociative flashback to Vietnam. Defendant argues that the trial court's finding that he was not insane is against the manifest weight of the evidence.
 {¶ 46} A weight of the evidence argument challenges the believability of the evidence, and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v.Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in State v.Martin (1983), 20 Ohio App.3d 172, 175:
 {¶ 47} "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."
 {¶ 48} The sole issue in this case was whether at the time Defendant committed this crime he was experiencing a disassociative flashback to a combat incident he endured in Vietnam that prevented him from knowing that his acts were wrong. The defense expert, Dr. Wilson, testified that was in fact the case, based upon his examination and testing of Defendant. The State's expert, Dr. Dyer, gave a contrary opinion that Defendant was not experiencing a disassociative flashback at the time of this crime, and was able to differentiate between right and wrong.
 {¶ 49} Dr. Dyer's opinion was based in part upon the results of a test she administered to Defendant, the MMPI-2, that showed Defendant was prone to exaggerate his problems with PTSD. Dr. Dyer noted that Defendant's history shows he claims he suffers from PTSD only when it suits his purposes. While Dr. Dyer agreed that Defendant suffers from chronic PTSD and has experienced disassociative flashbacks in the past, she doubted whether he presently experiences flashbacks because of the treatment and medications Defendant has received over the last several years. As evidence that Defendant was not experiencing a flashback at the time he committed this offense, Dr. Dyer noted Defendant's rational responses to the victims during the event, his leaving the scene of the crime, and the contradictory stories he gave to police when apprehended a short time later in an effort to avoid arrest.
 {¶ 50} The trial court chose to believe the opinion of the State's expert over that of Defendant's expert, and concluded that the evidence fails to demonstrate that Defendant was experiencing a disassociative flashback at the time he committed this offense that prevented him from knowing the wrongfulness of his conduct. The record supports that decision. The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. State v.DeHass (1967), 10 Ohio St.2d 230. This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the factfinder lost its way. State v. Bradley (Oct. 2, 1997), Champaign App. No. 97-CA-03.
 {¶ 51} In reviewing this record as whole, we cannot say that the evidence weighs heavily against a conviction and a finding that Defendant was not insane, that the trial court lost its way, or that a manifest miscarriage of justice has occurred. Defendant's conviction is not against the manifest weight of the evidence.
 {¶ 52} The third assignment of error is overruled. The judgment of the trial court will be affirmed.
WOLFF, P.J. and BROGAN, J., concur.