DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Following a jury trial in the Barberton Municipal Court, Theodore D. Mann was convicted of operating a motor vehicle while under the influence of alcohol, in violation of R.C. 4511.19(A)(1), and driving on a suspended license, in violation of R.C. 4507.02.[1] The jury also found Mann guilty of operating a motor vehicle with a prohibited blood alcohol concentration, in violation of R.C. 4511.19(A)(3). That count was dismissed pursuant to R.C. 4511.19(C). Mann has appealed from his conviction for operating a motor vehicle while under the influence of alcohol.
Mann has assigned as error that (1) the evidence presented by the state was insufficient to establish that he had "operat[ed] a vehicle," and (2) his trial counsel was ineffective because he did not stipulate to Mann's suspended license and did not object to a comment made about Mann's post-Miranda silence.
 I
Gary Smith, Mann's friend and mechanic, testified that Mann came to his garage at about midnight because Mann's car was overheating. Smith couldn't help Mann at the time, but gave him two jugs of water in case the vehicle overheated. According to Smith, Mann was sober when he arrived at Smith's garage and when he left, with a sealed bottle of alcohol between the seats of the car, on his way to the Loyal Oak Lake Park.
Mann testified that on his way to the park, where he intended to build a campfire and party with his friends, he checked his mirror and saw white smoke. He pulled into the nearest driveway, and could not restart his car. His radiator was "spitting water out" so it took him a little while to get the cap off. When he tried to pour water into the radiator, "water was coming out of the radiator and it was hitting the fan blades." He testified that while he was "[i]n front of the car whenever I was trying to solve the overheating problem," he "gulped * * * down * * * about half a fifth" of Canadian Windsor. According to Mann, he had not consumed any alcohol before that time. According to him, after he had been by the side of the road for about twenty minutes or longer police officers arrived.
At 1:25 a.m., according to the "Daily Radio — Phone — Patrol Log" kept by it, the Norton Police Department received a call from the "Medina County Sheriff's Office in ref [sic] to a vehicle that was moving and `smoking' and is now off the side of the roadway, `smoking.'" At 1:26 a.m. the Norton police dispatcher issued a general call to any Norton police officer in the vicinity of ODOT maintenance garage, near I-76 and Route 21, to investigate the report. At 1:35 a.m., the dispatcher received a return call informing him that Car #3 had arrived on the scene. Officer Steven Davis was later identified as the officer driving responding vehicle.
Officer Davis testified that when he arrived Mann was holding the hood open with one hand, and pouring coolant into the radiator with the other. According to Davis, "[t]here was water spewing out of the radiator, the radiator cap was off, it was steaming, with water spewing out." Gary Smith, Mann's friend and mechanic, testified that the boil would "subside over a period of ten to fifteen minutes, or so." Officer Davis noticed that there was a "strong odor of alcoholic beverage coming from [Mann]" and his balance and coordination were poor. According to Officer Davis, Mann told him that he had driven his vehicle there. Officer Davis did not see "any alcohol in the entire vicinity in and around [the] vehicle," although he had not specifically looked for it. As the arresting officer, Officer Davis did not personally inventory the vehicle, but he testified that he was not aware of a bottle being found during any subsequent inventory search. Mann failed the field sobriety tests. He was arrested, and taken to the police station for a blood alcohol test. The blood alcohol test was administered at 2:01 a.m., and indicated that Mann had a blood alcohol content of .160.
At trial, the issue of whether or not Mann had a valid driver's license was potentially disputed. When Officer Davis initially encountered him, Mann showed Officer Davis an apparently valid California driver's license. According to Mann's counsel,
 [T]there is some doubt, your honor [as to whether or not Mann was under suspension]. I think there was testimony as to the fact that he handed a California license to the officer. I think that the evidence may show that although he was suspended in Ohio, there was a good faith basis, he was carrying a valid California license.
During the combined trial the three charges, the state sought to introduce Mann's driving record as proof that he was driving with a suspended license. Mann moved to suppress the printout from the Ohio Bureau of Motor vehicles because it indicated that Mann had three prior convictions for driving under the influence. In the alternative, Mann requested that the prejudicial information be redacted if the form was to be shown to the jury. The prosecution responded that Mann's Ohio driving record was admissible because the suspension arose from a "failure to pay a reinstatement as it relates to the driving while under the influence." The court ruled that "if there's going to be no stipulation as to the driving under suspension part of it or the suspended license part of it, the whole document comes in." Mann's counsel responded, "My exception's noted for the record."
In a separate portion of the trial, Officer Davis explained the procedure he followed when he evaluated Mann's intoxication, and ultimately placed Mann under arrest. Officer Davis commented that he "Mirandized the subject." The prosecutor asked Davis to explain what that meant. Officer Davis responded,
 What that is, is advising Mr. Mann his rights [sic], which means if I want to interview him and ask him some incriminating questions, I want to advise him that he has the right to have a lawyer with him while those question [sic] are being asked, and if he doesn't want to answer those questions, he doesn't have to, within his legal rights. And he didn't waive those rights and did not answer any of my questions at that point.
The explanation of the arrest continued after that exchange, without comment by either side.
 II A. Sufficiency of the Evidence
In his first assignment of error, Mann has asserted that the evidence presented at trial was insufficient to support a determination that he was guilty of operating a motor vehicle under the influence of alcohol. The Ohio Supreme Court has articulated the following test for appellate review of an assertion that the evidence was not sufficient to support the verdict:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
Mann admitted being under the influence of alcohol and driving the motor vehicle to the location at which he was arrested. His contention was that he came under the influence of alcohol after he arrived at that location. To survive a sufficiency challenge, the evidence introduced must be such that a rational trier of fact could conclude beyond a reasonable doubt, from both the direct and circumstantial evidence, that Mann was under the influence of alcohol while he was operating the motor vehicle. See R.C. 4511.19(A)(1).
According to the radio traffic log kept by the Norton police, a vehicle was "moving and `smoking,' and is now off the side of the roadway `smoking.'" Ten minutes later, in the same location, a Norton Police Officer found Mann holding the hood of his car up with one hand and attempting to pour water into a still boiling radiator with the other. The testimony of Mann's mechanic friend, Smith, that the boiling would stop in ten to fifteen minutes is consistent with the radio-traffic log. That evidence is sufficient for a rational trier of fact to find, beyond a reasonable doubt, that Mann was operating his car approximately ten minutes before he encountered the Norton Police.
By the time the Norton Police arrived, Mann had tried and failed to get his car started again. He had removed the radiator cap and both hands were occupied trying to pour water into his radiator. There was no alcohol container in sight. The only officer to testify was not aware of a bottle turning up later during an inventory search of his car. Mann admitted that it took him a while to get the radiator cap off because it was so hot. From this, a rational trier of fact could decide, beyond a reasonable doubt, that ten minutes is too short a period of time for Mann to (1) attempt and fail to restart his vehicle; (2) guzzle a half a fifth of Canadian Windsor; (3) dispose of the bottle in a place that was not immediately obvious to Officer Davis; (4) absorb the alcohol sufficiently to make his balance and coordination poor; (5) fumble around getting the radiator cap off, (6) open the hood, and hold it open; and (7) pour water into the radiator. From this, a rational trier of fact could make the inference that Mann's consumption of the alcohol occurred before his car broke down, and that, beyond a reasonable doubt, Mann was operating the car under the influence of alcohol, when it was seen moving ten minutes earlier.
 B. Ineffective Assistance of Counsel
To establish that trial counsel was so deficient that Mann was denied his right to counsel, and is entitled to a new trial because of it, he must demonstrate deficient performance, and prejudice resulting from that deficient performance. Stricklandv. Washington (1984), 466 U.S. 668, 687, 80 L.Ed.2d 674, 693. The prejudice must reach such a level that it is reasonably probable that the professionally unreasonable performance caused him to lose what he otherwise would have won. United States v.Morrow (C.A.6 1992), 977 F.2d 222, 229, certiorari denied
(1993), 508 U.S. 975, 125 L.Ed.2d 668.
Mann has asserted that his trial counsel was ineffective because (1) he did not stipulate to Mann's suspended license; and (2) he did not object to the comment by a state witness that "he didn't waive [his Miranda] rights and did not answer any of my questions."
The decision to stipulate to certain facts, or not, is one of trial strategy. State v. Braxton (1995), 102 Ohio App.3d 28,48-49. The reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689,80 L.Ed.2d at 694. Unless Mann has established that the strategy was so objectively unreasonable as to rebut the strong presumption that his counsel's conduct was reasonable, this court will not second guess his counsel's trial strategy decisions. See State v. Mason
(1998), 82 Ohio St.3d 144, 157.
Mann admitted driving that night. Because of this it is almost inevitable the jury would have convicted Mann of driving with a suspended license had he stipulated that his license was suspended at the time. In contrast, Mann's conviction for driving under the influence was not an inevitable consequence of the jury learning that he had prior DUI convictions. The information about his prior convictions was prejudicial, but legally irrelevant, and the evidence supporting his conviction was almost entirely circumstantial. The jury could have rejected the prejudicial information and acquitted him, if it found his version of the events believable.
By refusing to stipulate that Mann's license was suspended Mann's counsel preserved the opportunity to obtain an acquittal on all three counts. By maintaining an objection to the introduction of the driving record, Mann's counsel also preserved the opportunity for appellate review of the potentially erroneous evidentiary ruling.[2]
Mann has also asserted that Officer Davis' comment that Mann "didn't waive [his Miranda] rights and did not answer any of my questions at that point," was a violation of Doyle v. Ohio (1976),426 U.S. 610, 49 L.Ed.2d 91. In Doyle, the Supreme Court held that, "[T]he use for impeachment purposes of petitioner's silence, at the time of the arrest and after receiving the Miranda warnings, violated the Due Process Clause of the Fourteenth Amendment." Id. at 619, 49 L.Ed.2d at 98. The failure of Mann's trial counsel to object to Officer Davis' comment was ineffective assistance of counsel, according to Mann. The decision as to whether to object to potentially excludable testimony is, like the decision not to stipulate to a suspended license, primarily a matter of trial strategy. State v. Campbell (1994), 69 Ohio St.3d 38,53. Not all inappropriate comments on post-Miranda silence are violations of Doyle. State v. Greenhill (Oct. 6, 1993), Lorain App. No. 93CA005546, unreported. Even if the admission of this is particular comment was error, it might not have been reversible error.[3] Brecht v. Abrahamson (1993),507 U.S. 619, 629-630, 123 L.Ed.2d 353, 367.
Here, (1) the single comment was made by a witness, not the prosecutor; (2) the prosecutor did not ask the witness if Mann spoke or remained silent after the Miranda warnings, he merely asked what Mirandizing someone meant; (3) the response given by the witness was a relatively unobtrusive comment on Mann's exercise of his right to remain silent; and (4) neither party pursued the comment. The comment itself probably had minimal impact, if any. Objecting to it would have drawn attention to it, as would have any corrective instruction. Because of this, it was not an objectively unreasonable decision by Mann's counsel to decide to let the comment pass without objection.
Neither of the allegedly erroneous decisions made by the Mann's trial counsel was so obviously unreasonable that it served to rebut the presumption of competence to which his performance is entitled. This court will not second guess his decisions. Mann's second assignment of error is overruled.
 III
Mann's first assignment of error is overruled because there was sufficient direct and circumstantial evidence from which a rational trier of fact could have found, beyond a reasonable doubt, that Mann was operating his motor vehicle after becoming intoxicated, rather than before. Because both decisions by Mann's trial counsel were objectively reasonable strategy decisions, this court will not second guess them. Mann's second assignment of error is overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Barberton Municipal Court, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
WILLIAM R. BAIRD, FOR THE COURT
WHITMORE, J., BATCHELDER, J., CONCUR.
[1] Although the judgment did not state the subsection under which Mann was convicted, the original complaint charged that he violated R.C. 4507.02(C).
[2] Appellate counsel has not challenged the trial court's evidentiary ruling that the prior driving record was admissible, unless Mann stipulated that his license was suspended. Because the issue was not raised on appeal, it is not reviewed here.
[3] Because the question has not been directly raised, this court has not reviewed whether Officer Davis' comment was erroneous and, if so, was harmless. The observations that it might not have been error and, if error, might have been harmless are offered to illustrate the weighing of options Mann's counsel is presumed to have done in determining whether to object to Officer Davis' comment.