DECISION AND JUDGMENT ENTRY
These consolidated appeals are from judgments of conviction and sentence entered by the Lucas County Court of Common Pleas after a jury found defendant-appellant, Nick Butler, guilty of one count of receiving stolen property and one count of burglary. From that judgment, appellant assigns the following as error:
"FIRST ASSIGNMENT OF ERROR
 THE PROSECUTOR'S MISCONDUCT DURING THE COURSE OF THE TRIAL, DENIED THE DEFENDANT-APPELLANT DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES, AND ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION.
"SECOND ASSIGNMENT OF ERROR
 THE CUMULATIVE EFFECTS OF THE ERRORS IN THE CASE HEREIN, DENIED THE DEFENDANT-APPELLANT A FAIR TRIAL REQUIRING THAT THE CONVICTIONS HEREIN BE REVERSED AND THE CASE REMANDED."
The facts giving rise to this appeal are as follows. William and Karen Muhlstadt live at 5408 Glenridge Drive in Toledo, Ohio. On the night of September 28, 1998, William returned home from work at approximately 5:30 p.m. Karen, a nurse, was working the 4:00 p.m. to midnight shift that day. Because she was concerned about security at the hospital, she left her purse at home on the back of a dining room chair, taking only her driver's license and a few essentials with her to work. William testified that during the evening and before he went upstairs to bed at approximately 10:00 p.m., he saw his wife's purse in the dining room. William and Karen both testified that the purse contained, among other things, a cell phone, a spare set of keys to the Muhlstadt's car and home, and various credit cards.
At approximately 12:30 a.m. on September 29, 1998, Karen Muhlstadt returned home from her job. After entering the home, she walked into the first floor bathroom and noticed that the window was wide open and the screen had been cut on three sides. She also noticed that the knickknacks that had been sitting on the window ledge were gone. Karen woke William and the two searched the house but could not find anything missing so they went to bed. At approximately 2:30 that morning, the Muhlstadt's telephone rang. A police officer informed them that the sheriff's office had the Muhlstadt's cell phone, credit cards and keys and asked the Muhlstadts to come to the station to identify the items. At that point, the Muhlstadts realized that Karen's purse was missing from the back of the dining room chair. The Muhlstadt's then went to the police station and positively identified the items as theirs.
Earlier in the morning, Thomas Parker, vice president in charge of security at Private Investigations and Security, was training another security officer at the Hidden Cedars Apartments at 6201 Garden Road, Toledo, Ohio, which is approximately two miles from the Muhlstadt's home. Parker testified that at about 12:30 a.m., a car pulled into the parking lot with illuminated headlights but no taillights. Several minutes later, Parker saw two men walking the parking lot looking into cars. When Parker asked if he could help them, the men stated that they were looking for a friend. At the trial below, Parker identified Butler as one of the men he saw that morning. The men continued to walk around the parking lot for a few minutes and then got back into their car to leave. Parker then got in his car and followed them out of the parking lot, noting their license plate number. He also notified other security guards working in the area of the car. When he subsequently returned to Hidden Cedars, a sheriff's deputy was doing a drive through so Parker told him what he had seen and gave the deputy a description of the car and the license plate number.
At approximately 2:00 a.m. on September 29, 1998, Deputy Sheriff William Talbott of the Lucas County Sheriff's Department was on road patrol when he received a report of a suspicious car with no working taillights. The report also included the license plate number of the car. Subsequently, he encountered the car with no working taillights on Holland-Sylvania Road. Before Talbott could pull over the car, the car had activated its four-way flashers and had pulled off to the side of the road. Talbott then activated his emergency lights and pulled in behind the car. Talbott testified that two men were in the car and he identified appellant as the passenger. Talbott then questioned the pair about the burned out taillights, and asked the driver for his driver's license. Upon further questioning, appellant stated that the car was his but that he did not have a driver's license. Talbott then ran a warrants check on both appellant and the driver and learned that although neither had outstanding warrants, the driver's license of the driver had been suspended. Talbott also learned that the license plate on the car belonged to a different car of appellant and that it had expired. Accordingly, Talbott determined that the car would need to be towed and that an inventory search of the car would need to be completed. Upon completing that search, officers of the Lucas County Sheriff's Department found a cell phone, credit cards and keys that were later determined to belong to the Muhlstadt's and which the Muhlstadt's indicated had been in Karen's purse.
In addition to the above facts, subsequent forensic testing of the Muhlstadt's window sill revealed three fingerprints determined to belong to appellant.
Subsequently, appellant was indicted and charged with one count of receiving stolen property in violation of R.C.2913.51 and 2913.71(A) and one count of burglary in violation of R.C. 2911.12(A)(1). The case proceeded to a jury trial at which the above evidence was introduced. At the conclusion of the trial, the jury found appellant guilty of both charges. It is from those convictions and the subsequent sentences entered by the court that appellant now appeals.
In his first assignment of error, appellant contends that prosecutorial misconduct during the course of the trial operated to deny him his constitutional right to a fair trial. He cites two comments made by the prosecutor during her opening statement and two comments made during her closing argument in support of his position. During her opening statement, the prosecutor stated:
 "Ladies and gentlemen, this is a case of burglary that you're going to hear today. I would like you to think back to September 28, 1998, last fall in September. I hope you were all sleeping safely in your beds somewhere here in Toledo or in Lucas County, wherever you live, and that no one sneaked into your home and stole something."
Appellant's trial counsel objected to this statement and the trial court sustained the objection. The prosecutor, however, continued by stating: "Not everyone in Lucas County was that fortunate." Appellant's trial counsel again objected and the court again sustained the objection. The court then instructed the prosecutor: "You may tell them what you believe the evidence will show." In her closing argument, the prosecutor continued:
 "I would like to suggest to you, ladies and gentlemen, that Nick Butler, this man right here, is the reason we all lock our doors at night. You go to bed at night thinking that you're safe and secure in your home, and so do I."
Once again appellant's trial counsel objected, however, this time the court overruled the objection. Finally, the prosecutor argued:
 "And the third thing that he had and that he kept were the keys to their house and the keys to their car, because he wasn't done there. There is only one use that those keys have, and that's to go back to their house and take the other things that he might want, to go back and find that car which would be easily identifiable. She had her license plate on the keys, on the key ring. He wasn't done, and this man right here had the intention of coming back and doing more at the Muhlstadts' house."
Appellant's trial counsel objected to this argument and the objection was sustained. Appellant now asserts that these instances of prosecutorial misconduct amounted to prejudicial error.
The test for prosecutorial misconduct is whether the prosecutor's conduct at trial was improper and prejudicially affected the substantial rights of the defendant. State v. Lott
(1990), 51 Ohio St.3d 160, 165. A prosecutor's conduct during trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial. State v. Apanovitch (1987), 33 Ohio St.3d 19,24. To determine if the alleged misconduct resulted in prejudice, an appellate court should consider the following factors: "(1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant." State v. Braxton (1995), 102 Ohio App.3d 28, 41. Additionally, the appellate court should consider whether the alleged misconduct was "an isolated incident in an otherwise properly tried case." Id. A reversal for prosecutorial misconduct is not warranted unless it is clear beyond a reasonable doubt that the outcome of the trial would have been different but for the misconduct. State v. Smith (1984), 14 Ohio St.3d 13, 15;State v. Vallejo (Oct. 18, 1999), Lucas App. No. L-98-1090, unreported.
In this case, the prosecutor's comments regarding appellant were clearly improper. The purpose of an opening statement is to acquaint the jury with the general nature of the case and to outline the facts which counsel expects the evidence to show. Maggio v. Cleveland (1949), 151 Ohio St. 136, 140. The prosecutor's comments during her opening statement in the present case did neither. Nevertheless, appellant's trial counsel objected to the comments and those objections were sustained. Moreover, the court instructed the jury both before the parties gave their opening statements and after the parties made their closing arguments that statements of counsel and opening statements and closing arguments of counsel are not evidence and are not to be considered as such. Juries are presumed to follow and obey the instructions given to them by the trial court. SeeParker v. Randolph (1979), 442 U.S. 62, 74, overruled in part on other grounds in Cruz v. New York (1987), 481 U.S. 186. In addition to these considerations, we find that there was overwhelming evidence of appellant's guilt. Accordingly, we cannot say that the prosecutor's comments during her opening statement substantially prejudiced appellant.
With regard to the comments made during closing arguments, we note that "[t]he prosecution is normally entitled to a certain degree of latitude in its concluding remarks." Statev. Smith, supra at 13. Generally, the state may comment freely on "what the evidence had shown and what reasonable inferences may be drawn therefrom." State v. Lott, supra at 165. However, prosecutors may not invade the realm of the jury by, for example, rendering their personal beliefs regarding guilt and credibility, or alluding to matters outside of the record. Statev. Smith, supra at 14. In our view, the prosecutor's comments in this case were improper because they went beyond the record and were inflammatory. Nevertheless, viewing the prosecutor's closing argument in its entirety, as we must, State v. Moritz (1980),63 Ohio St.2d 150, 157, and given the overwhelming evidence of appellant's guilt and the jury instructions indicated above, we cannot say that appellant was denied a fair trial.
The first assignment of error is not well-taken.
In his second assignment of error, appellant asserts that the cumulative effect of the errors committed in the proceedings below denied him his right to a fair trial.
Appellant asserts that the trial court erred in allowing Thomas Parker, the security guard, to testify that he found appellant's behavior on the night of the burglary to be "suspicious." He also asserts that the court erred in allowing Sheriff Talbott to testify that appellant's driver's license had been suspended and that the license plate on appellant's car was not registered to that car. Appellant contends that this evidence was irrelevant and prejudicial and amounted to improper character evidence. Initially, we note that appellant's trial counsel did not object to either of these testimonial statements. Accordingly, we can only reverse a trial court's judgment upon a finding of plain error. "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise." State v. Moreland (1990),50 Ohio St.3d 58, 62. In light of the overwhelming evidence of appellant's guilt, we cannot find that but for the allowance of this testimony, the outcome of the trial could have been different.
Appellant further contends that the trial court erred in allowing Deputy James Schiavone to testify, over appellant's objection, that the lock on the glove compartment of appellant's car had pry marks on it and two screw drivers were found underneath the car's seat. Appellant argues that this was improper character evidence. During the trial, appellant's counsel argued that this was improper character evidence in that it portrayed the vehicle as having been stolen.
The admission and exclusion of evidence rests within the sound discretion of the trial court and a reviewing court must not disturb the trial court's decision absent a clear abuse of that discretion. State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. An abuse of discretion involves more than an error of judgment or law; it connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary.State v. Adams (1980), 62 Ohio St.2d 151, 157.
Evid.R. 404(A) reads in relevant part:
 "Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion * * *."
Appellant asserts that Deputy Schiavone's testimony regarding the glove compartment lock was improper character evidence. We disagree. Nothing about this testimony addressed appellant's character or a trait of his character. Accordingly, the trial court did not abuse its discretion in allowing it.
Finally, appellant asserts that the trial court erred when it refused to allow appellant to inquire of Sergeant Heil as to the inventory search of the automobile. The questions posed by appellant addressed the Lucas County Sheriff Department's policies and procedures regarding the impounding of vehicles and the completing of inventory forms. The court sustained the state's objection on the grounds of relevance. Appellant now argues that this evidence should have been allowed because it went to the credibility of the officers who conducted the search of the automobile.
Evid.R. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evidence which is not relevant is inadmissible. Evid.R. 402. It is within the sound discretion of the trial court to apply its common experience and logic to determine the relevance of evidence.State v. Lyles (1989), 42 Ohio St.3d 98, 99-100. In the present case, the trial court had, prior to trial, denied appellant's motion to suppress finding that the inventory search of appellant's car was valid. As such, any questions regarding whether the officers followed the proper policies and procedures in impounding the car and completing the inventory forms were not relevant to the issues in the trial below: whether appellant was guilty of burglary and receiving stolen property. Accordingly, the trial court did not abuse its discretion in finding this testimony to be irrelevant.
Because the trial court did not err in making the evidentiary rulings now challenged by appellant, the second assignment of error is not well-taken.
On consideration whereof, the court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Lucas County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
Peter M. Handwork, J., Richard W. Knepper, P.J.Mark L. Pietrykowski, J., JUDGES CONCUR.
 ____________________________ PIETRYKOWSKI, J.