[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant Lawrence Moore, pro se, appeals his traffic conviction from the Toledo Municipal Court for failure to yield on left turn. Because we conclude Moore's conviction is not against the manifest weight of the evidence, we affirm.
 {¶ 2} In February 2002, Moore was cited for "failure to yield left turn" in violation of Toledo Municipal Code 331.10(e). At trial, the following evidence was presented. Moore was at the intersection of Detroit Avenue and South Street. He was waiting at a red light to turn left from northbound Detroit Avenue to proceed west onto South Street. After Moore's light turned green, he commenced his left turn and was struck by Mary Todd who was proceeding south on Detroit Avenue.
 {¶ 3} The trial court found that Moore violated Toledo Municipal Code 331.10, failure to yield left turn, and fined him $25 and costs. Moore then filed a motion for new trial. The trial court denied the motion.
 {¶ 4} Moore now appeals his conviction and the denial of his new trial motion, setting forth the following seven assignments of error:
 {¶ 5} "1. The court erred by not sua sponte dismissing the case when a charging officer could not remember allegations in his complaint against a defendant appearing pro se;
 {¶ 6} "2. The court erred by not sua sponte dismissing the case when a charging officer and prosecutor tried defendant on violating TMC 331.10(e) despite the complaint alleging he had violated TMC 331.10(c);
 {¶ 7} "3. The court erred by not sua sponte dismissing the case when the charging officer's testimony had been impeached;
 {¶ 8} "4. The court erred by not allowing the prosecutor to be called as a witness after he led the charging officer and a witness, and after they had lied repeatedly under oath, to testify on Toledo and Ohio law related to a complaint;
 {¶ 9} "5. The court erred by validating the prosecutor's appeal to `common sense' rather than relevant statute language;
 {¶ 10} "6. The court erred by not setting a new trial on grounds the prosecutor had no privilege to avoid being a witness;
 {¶ 11} "7. The court erred by not setting a new trial on grounds its decision was either not based on substantial evidence (ignoring defendant's and witness Mansberger's testimony) or was based on prosecutorial misconduct (that prosecutor led a witness who crashed into defendant to establish the false speed limit and led the police officer to establish a practice to watch traffic light cycles after accidents, and the officer followed that by lying about the cycles)."
 {¶ 12} Because Moore's argument section contains different headings than his stated assignments of error and his assignments of error are intermingled throughout his brief, we will address his second, fourth, fifth, first and third, and sixth and seventh assignments of error in that order.
I. Sua Sponte Dismissal of Complaint
 {¶ 13} In his second assignment of error, Moore argues that he was not tried on the charges contained in the complaint. Moore contends the complaint charges him with violating Toledo Municipal Code 331.10(c), but he was tried for violating Toledo Municipal Code 331.10(e). For this reason, he states that the trial court should have sua sponte dismissed his case.
 {¶ 14} Traf.R. 11(B)(1)(b) requires that any alleged defect in the complaint be raised prior to plea. As Moore did not do this or, in fact, ever raise this issue before the trial court, he has waived his right to raise this error on appeal. Village of Johnstown v. Howard (Nov. 8, 1999), 5th Dist. No. 99-CA-49; State v. Roth (Aug. 17, 1984), 6th Dist. No. WMS-84-1.
 {¶ 15} Even if Moore had properly preserved this issue, we find that this assignment of error not well-taken. In this case, the complaint is a handwritten traffic ticket. Crim.R. 3 defines a complaint as "a written statement of the essential facts constituting the offense charged." The complaint must also include the numerical designation of the applicable statute or ordinance. Id. Under Ohio law, Moore's traffic citation is the charging instrument setting forth his offense. City ofNorwalk v. Hoffman (1989), 64 Ohio App.3d 34, 35; State v. Kramer (Feb. 6, 1998), 2nd Dist. No. 16644.
 {¶ 16} A review of the traffic citation discloses that on February 19, 2002, Lawrence V. Moore operated a 1988 yellow Chevy van and committed the offense of failure to yield left turn in violation of TMC 331.10(E). Moore argues that the "E" in the code section is really a "C." At trial, Moore asked the officer to read into the record from the actual ticket the section that he had been cited under. The officer replied "331 — Toledo Municipal Code 331.10(e)." Although the handwriting may not be crystal clear as to whether the code section is a "C" or an "E," the officer wrote a similar "E" when he signed his name, T E Smith, on the front and back of the traffic citation.
 {¶ 17} Even if the complaint did specify the wrong section of the Toledo Municipal Code, an error in the numerical designation of a complaint is not grounds for dismissal of the complaint if the defendant is not prejudiced or misled by the error. See, State v. Grimes, 3rd Dist. No. 9-01-22, 2001 Ohio 2265; State v. Mays (1995),104 Ohio App.3d 241. Moore does not claim he was prejudiced or misled. The traffic citation on the front identifies the offense as "failure to yield left turn," and the back of the citation contains a statement by the officer which states in part: "Defendant was N/B Detroit Ave at South. Defendant turned left in front of an oncoming vehicle causing the collision."
 {¶ 18} We conclude that these facts were more than sufficient to inform Moore of the offense with which he was charged. Accordingly, the trial court did not err by not sua sponte dismissing the case. The second assignment of error is found not well-taken.
II. Prosecutor as a Witness and Prosecutorial Misconduct
 {¶ 19} In the fourth assignment of error, Moore alleges that the trial court erred when it did not allow him to call the prosecutor as a witness. The admission or exclusion of relevant evidence is within the sound discretion of the trial court and its decision to admit or exclude such evidence cannot be reversed absent a showing of an abuse of that discretion. State v. Combs (1991), 62 Ohio St.3d 278. The term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.State v. Adams (1980), 62 Ohio St.2d 151, 157. When applying the abuse of discretion standard, a reviewing court is not free to substitute its judgment for that of the trial court.
 {¶ 20} Moore argues that because Evid.R. 601 provides that every person is competent to be a witness to testify and because under Evid.R. 501 no person has a privilege to refuse to testify unless otherwise exempted by statute or common law, he should have been permitted to call the prosecutor as a witness.
 {¶ 21} The rules of evidence, however, need to be read in conjunction with one another. Evid.R. 602 provides in part that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter." So while a witness may be competent and may not have a privilege to refuse to testify, the witness will only be allowed to testify if he has personal knowledge of the matter. In this case, the prosecutor stated he was not at the scene, and therefore, lacked the requisite personal knowledge in order to testify.
 {¶ 22} Furthermore, Moore's stated purpose for calling the prosecutor to the stand was to have the prosecutor interpret the law. The trial court correctly informed Moore that it was the role of the court to interpret the law. A witness's interpretation of the law should not be permitted, as that is within the sole province of the court. Wagenheim v.Alexander Grant Co. (1983), 19 Ohio App.3d 7, 19.
 {¶ 23} The fourth assignment of error is not well-taken.
 {¶ 24} Moore's fifth assignment of error appears to contend that the trial court's verdict was based on prosecutorial misconduct. Moore does not specifically indicate what actions by the prosecutor constituted misconduct, other than the prosecutor's reference in his closing argument to the use of common sense. He does, however, complain that the prosecutor led Todd and the officer during their testimony, presented "only tainted-by-perjury testimonies" and validated false charges when the prosecutor refused to testify.
 {¶ 25} We have already concluded that the trial court did not err when it denied Moore's request to have the prosecutor testify; therefore, the prosecutor's "refusal" to testify is not misconduct.
 {¶ 26} With regard to the alleged misconduct during the prosecutor's rebuttal argument, the prosecution has wide latitude during opening and closing arguments. Questions over the propriety of these arguments are generally left to the trial court's discretion. See Statev. Loza (1994), 71 Ohio St.3d 61, 78. The test for prosecutorial misconduct is whether the prosecutor's conduct at trial was improper and prejudicially affected the substantial rights of the defendant. State v.Lott (1990), 51 Ohio St.3d 160, 165. A prosecutor's conduct during trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial. State v. Apanovitch (1987), 33 Ohio St.3d 19, 24. To determine if the alleged misconduct resulted in prejudice, an appellate court should consider the following factors: "(1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant." State v. Braxton (1995),102 Ohio App.3d 28, 41. Additionally, the appellate court should consider whether the alleged misconduct was "an isolated incident in an otherwise properly tried case." Id. A reversal for prosecutorial misconduct is not warranted unless it is clear beyond a reasonable doubt that the outcome of the trial would have been different but for the misconduct. State v.Smith (1984), 14 Ohio St.3d 13, 15; State v. Vallejo (Oct. 18, 1999), 6th Dist. No. L-98-1090.
 {¶ 27} The record indicates Moore did not object to the prosecutor's statement. We, therefore, must analyze this argument under a plain error analysis. In order to prevail under a plain error analysis, Moore bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. Notice of plain error must be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v.D'Ambrosio (1995), 73 Ohio St.3d 141, 144; State v. Long (1978),53 Ohio St.2d 91, paragraph three of the syllabus.
 {¶ 28} In his rebuttal argument, the prosecutor stated "I think Mr. Moore's interpretation of several different statutes would have us believe that when someone is turning left, everyone else has to yield the way, and these statutes don't change what — the common sense that everyone knows, that everyone learns. These statutes actually just enforce those rules and I would ask this the [sic] Court find Mr. Moore guilty." We find that the isolated statement made by the prosecutor with regard to common sense is not misconduct, nor is it plain error.
 {¶ 29} Moore also appears to allege misconduct because the prosecutor asked leading questions of the investigating officer and the other driver. Even though Evid.R. 611(C) states that "[l]eading questions should not be used on the direct examination of a witness," a review of the transcript shows Moore did not object to the leading questions. Failure to object to the prosecution's leading questions "constitutes a waiver of any claim of error relative thereto, unless but for the error, the outcome of the trial clearly would have been otherwise." State v.Owens (Feb. 25, 2000), 2nd Dist. No. 17394, quoting State v. Underwood
(1983), 3 Ohio St.3d 12, syllabus. Additionally, it is within the sound discretion of the trial court to permit the state to ask leading questions of its own witnesses. State v. Miller (1988), 44 Ohio App.3d 42,45. Accordingly, we find the prosecution's use of leading questions during direct examination was not reversible error.
 {¶ 30} Finally, Moore argues that the prosecutor engaged in misconduct when he presented "tainted-by-perjury testimonies." Moore argues that the other driver, Mary Todd, lied about being late for work, about the weather conditions, about seeing the light change from red to green, and about the speed limit. He further contends that the officer misrepresented the cycle of lights.
 {¶ 31} In State v. Iacona (2001), 93 Ohio St.3d 83, 97, the Supreme Court of Ohio applied the following standard for a claim of this nature:
 {¶ 32} "`The knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.' ** * Such a claim is in the nature of an allegation of prosecutorial misconduct, and the burden is on the defendant to show that '(1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false.'" [Citations omitted.]
 {¶ 33} Moore has not satisfied this burden. Most of the testimony characterized by Moore as perjury are matters of opinion, such as whether Todd was late for work or the extent of the visibility that day. Although Moore maintains that Todd established a false speed limit, she did not testify as to the actual speed limit on Detroit Avenue. She simply testified that she was driving under 40 mph. Moore also argues that the officer misrepresented the cycle of the lights. The actual cycle of lights, however, is immaterial in this case because both Mansberger, the independent witness, and Todd testified that Todd had a green light before entering the intersection. Furthermore, Moore has not shown that the prosecutor knew that any of the testimony was false.
 {¶ 34} We find Moore has failed to show any alleged misconduct by the prosecution denying him his right to a fair trial. Moore's fifth assignment of error is overruled.
III. Weight of the Evidence
 {¶ 35} In Moore's first and third assignments of error, he challenges the manifest weight of the evidence. Weight of the evidence indicates that the greater amount of credible evidence supports one side of an issue more than the other. State v. Thompkins (1997),78 Ohio St.3d 380, 387, quoting Black's Law Dictionary (6 Ed. 1990) 1594. The Ohio Supreme Court has defined the standard applied to determine whether a criminal conviction is against the manifest weight of the evidence:
 {¶ 36} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." Id. at 387, citing Tibbs v. Florida (1982), 457 U.S. 21, 42.
 {¶ 37} To determine whether this is an exceptional case where the evidence weighs heavily against conviction, an appellate court must review the record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id., quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175. Only if we conclude that the trier of fact clearly lost its way in resolving conflicts in evidence and created a manifest miscarriage of justice will we reverse the conviction and order a new trial. Id.
 {¶ 38} Moore argues that his conviction was against the manifest weight of the evidence because he had the right of way since Todd was governed by a combination light that required her to yield the right of way and because she was speeding and not using ordinary and reasonable care.
 {¶ 39} Throughout his argument, Moore insists that Todd was faced with a combination light that required her to yield the right of way since he had a solid green light. Toledo Municipal Code 313.03 provides in pertinent part:
 {¶ 40} "Whenever traffic is controlled by traffic control signals exhibiting different colored lights, or colored lighted arrows, successively one at a time or in combination, only the colors green, red and yellow shall be used except for special pedestrian signals carrying a word legend. The lights shall indicate and apply to drivers of vehicles and to pedestrians as follows:
 {¶ 41} "(a) Green Indication:
 {¶ 42} "(1) Vehicular traffic facing a circular green signal may proceed straight through or turn right or left unless a sign at such place prohibits either such turn. But vehicular traffic, including vehicles turning right or left, shall yield the right of way to other vehicles and pedestrians lawfully within the intersection or adjacent crosswalk at the time such signal is exhibited.
 {¶ 43} "(2) Vehicular traffic facing a green arrow signal, show alone or in combination with another indication, may cautiously enter the intersection only to make the movement indicated by such arrow, or such other movement as is permitted by other indications shown at the same time. Such vehicular traffic shall yield the right of way to pedestrians lawfully within an adjacent crosswalk and to other traffic lawfully using the intersection."
 {¶ 44} Despite Moore's contention, the record shows that Todd was not faced with a combination light when she entered the intersection, but with simply a green circular light. Mansberger, the only independent witness, testified that he saw the turning arrow shut off and be replaced by a solid green light.
 {¶ 45} Furthermore, whether or not Todd was facing a combination light is really immaterial. Moore still had an obligation to comply with the turning rules as specified in Toledo Municipal Code 331.10(e), which provides:
 {¶ 46} "The driver of a vehicle intending to turn at an intersection shall be governed by the following rules:
 {¶ 47} "* * *
 {¶ 48} "(e) The operator of a vehicle intending to turn to the left within an intersection or into an alley, private road or driveway shall yield the right of way to any vehicle approaching from the opposite direction, whenever the approaching vehicle is within the intersection or so close to the intersection, alley, private road or driveway as to constitute an immediate hazard."
 {¶ 49} A careful examination of the record shows that Moore's conviction is supported by the weight of the evidence. Mansberger testified that he was at the intersection of South Street and Detroit Avenue waiting behind one other vehicle to turn left onto South Street from southbound Detroit Avenue. He stated he saw Todd pass by him on his right-hand side. He then saw Moore turn left in front of Todd. This testimony establishes that Todd was within or so close to the intersection that she constituted an immediate hazard, requiring Moore to yield the right of way.
 {¶ 50} Moore also claims that he did not have to yield the right of way to Todd because she was speeding and operating her vehicle in an unlawful manner. A driver can forfeit the right-of-way if he unlawfully operates his vehicle at a speed in excess of the posted limit or at a greater speed than will permit him to stop within the assured clear distance ahead. City of Steubenville v. Doty (Nov. 22, 1995), 7th Dist. No. 94-J-75. However, "[a] conviction for the violation of an ordinance providing that a vehicle within a street intersection intending to turn to the left shall yield the right of way to the driver of a vehicle approaching from the opposite direction, will not be disturbed on appeal, where the evidence plainly shows that the defendant in an intersection turned his vehicle to the left directly into or in front of another vehicle proceeding straight through the intersection on a green traffic light, and that although such latter vehicle may have been traveling at a speed prima facie unlawful, such speed in no way contributed to the collision between the two vehicles." City of Cleveland v. Keah (1952),157 Ohio St. 331, paragraph three of syllabus.
 {¶ 51} Whether a driver's speed is excessive or unreasonable under the circumstances is a question of fact. While Moore testified that Todd was speeding, he also said he only saw her an instant before the collision. Mansberger's testimony with regard to Todd's speed is contradictory. When asked if he had a chance to observe how fast Todd was going, Mansberger replied that he did not, and yet, he stated that she was driving excessively fast for the road conditions. Todd could only testify that she was driving under 40 mph.
 {¶ 52} Furthermore, even if Todd was speeding, there was evidence before the court that Moore turned suddenly in front of Todd. The officer testified that Moore admitted to him that he did not see Todd approaching the intersection. Mansberger's testimony places Todd almost within the intersection before Moore began his turn.
 {¶ 53} The trial court found that Todd had the right of way and that Moore failed to observe Todd. Factual findings of the trial court are given deference because the trial court is in a better position "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80. Based on the above, we conclude that the trial court did not lose its way and that Moore's conviction is supported by the weight of the evidence.
 {¶ 54} Moore's first and third assignment of error are not well-taken.
IV. New Trial Motion
 {¶ 55} Moore's sixth and seventh assignments of error concern the denial of his motion for a new trial. Moore did not argue these assignment of errors separately in his brief, and therefore we need not address these claimed errors. See App.R. 12(A)(2); Hawley v. Ritley
(1988), 35 Ohio St.3d 157, 159.
 {¶ 56} Even if these assignments had been properly argued, they would not be well-taken. Moore moved for a new trial pursuant to Crim.R. 33(A)(1), (2), (4) and (5). Moore argues that there was an irregularity in the proceedings and there was an error of law occurring at the trial when the trial court did not allow him to call the prosecutor as a witness. Given our decision on Moore's fourth assignment of error, these arguments fail. Moore also claims he is entitled to a new trial due to misconduct by the prosecuting attorney. Our decision on Moore's fifth assignment of error is dispositive of this argument. Finally Moore contends the verdict was not supported by sufficient evidence or was contrary to law. Our resolution of Moore's first and third assignments of error negates this argument as well.
 {¶ 57} As a result, Moore's sixth and seventh assignments of error are not well-taken.
 {¶ 58} Because substantial justice was done to the appellant, the judgment of the Toledo Municipal Court is affirmed. Appellant is ordered to pay the court costs of this appeal.
 JUDGMENT AFFIRMED.
Peter M. Handwork, P.J., Mark L. Pietrykowski, J., Judith Ann Lanzinger, J., CONCUR.