DECISION AND JUDGMENT
{¶ 1} In this appeal from the Lucas County Court of Common Pleas, appellant, Lawrence Anderson, appeals his convictions on: (1) one count of rape, a violation of R.C. 2907.02(A)(2) and (B), a felony of the first degree, with a specification that appellant is a sexually violent predator, pursuant to R.C. 2941.148; (2) one count of kidnapping, a violation of R.C. 2905.01(A)(4), a felony of the first degree with a specification that appellant committed this offense with a sexual motive as set forth in *Page 2 
R.C. 2941.147; and (3) one count of felonious assault, a violation of R.C. 2903.11(A)(1), a felony of the second degree. Appellant admitted that a felonious assault occurred; therefore, the only issues that went to trial were the alleged kidnapping and rape.
 {¶ 2} Appellant maintains that the following errors occurred in the court below:
 {¶ 3} "I. DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.
 {¶ 4} "II. DEFENDANT WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL DUE TO MISLEADING TESTIMONY THAT THE STATE FAILED TO CORRECT.
 {¶ 5} "III. THE TRIAL COURT ERRED BY DENYING DEFENDANT'S MOTION FOR A NEW TRIAL.
 {¶ 6} "IV. DEFENDANT'S RIGHT TO A FAIR TRIAL WAS VIOLATED BY PROSECUTORIAL MISCONDUCT."
 {¶ 7} The following facts, as adduced at appellant's trial, are pertinent to our disposition of his assignments of error.
 {¶ 8} On February 19, 2007, Melvina J., a health worker, arrived at the residence of her client some time shortly after 10:00 p.m. When she arrived at that location and got out of her minivan, appellant, who until recently was living with Melvina, was standing there. He appeared to be angry. When the victim exited her minivan, appellant grabbed her and forced her head through a side window of the vehicle. Then, holding Melvina around the neck, he walked her a number of blocks, accusing her of "cheating on him" *Page 3 
and telling her, "If I can't have you, nobody can." Appellant also punched Melvina in the face as they walked. Throughout the entire incident appellant repeatedly told the victim that he was going to kill her and her children. Melvina kept telling appellant that she was not cheating and that she loved him. He took her down an alley to an empty garage where he continued raving about her alleged cheating. Appellant then picked up a "2x4" and swung it at Melvina's head. She put up her arm to protect her head and the piece of wood struck it, breaking her forearm.
 {¶ 9} At this point, Melvina's testimony at trial diverged from the trial testimony of Carrie L. Rawson, a Sexual Assault Nurse Examiner, Toledo Police Officer Jeffrey S. Payne, and Detective Gene Kutz of the Toledo Police Department's Special Victim's Unit, on the issue of whether appellant raped her while in the garage. Officer Payne testified that Melvina told him that a man, whom she never identified, placed his finger in her vagina, that he licked her genital area, and that he placed his penis in her vagina. In short, the victim indicated that this individual raped her. When Payne asked Melvina to identify her assailant, she refused, stating, "[H]e will kill me and my kids."
 {¶ 10} Detective Kutz provided similar testimony, but also stated that Melvina identified appellant as the rapist. Moreover, Detective Kutz interviewed appellant, who admitted putting the victim's head through the minivan window, forcibly taking her to the garage, and breaking her arm with the piece of wood, but insisted that he and Melvina then engaged in consensual sexual activity. *Page 4 
 {¶ 11} In her testimony, Nurse Rawson referred to Melvina's medical chart, which was admitted into evidence as a business record. According to the chart and Rawson's testimony, while in the garage, appellant pushed Melvina to the floor of the garage, penetrated her with his finger, licked her genital area, and then penetrated her with his penis. During this latter act, the chart indicates that appellant choked/strangled Melvina until she lost consciousness briefly. Rawson also testified that Melvina specifically identified appellant as the individual who attacked and raped her and that Melvina reviewed the notes taken by the nurse. Finally, Rawson indicated that the victim's wet and dirty coat was returned to her before she left the hospital.
 {¶ 12} When Melvina testified, however, she claimed that appellant never penetrated her vagina with his finger but that he put "his mouth on her vagina." She further maintained that she and appellant engaged in consensual sexual intercourse on a table in the garage. Melvina also denied ever seeing the notes taken by Nurse Rawson or of being provided with the opportunity to review any notes taken by Officer Payne and Detective Kurtz in order to determine their accuracy.
 {¶ 13} In Assignment of Error No. I, appellant contends that his trial counsel was ineffective because he failed to ascertain from the discovery provided by the state that the coat Melvina was wearing on the night of February 19, 2007 was in the Toledo Police Department's property room. Appellant alleges that had his trial counsel noticed the police department's receipt for Melvina's coat, he would have been more fully prepared to: (1) argue that he and Melvina engaged in consensual sex in the garage; and *Page 5 
(2) impeach the credibility of Nurse Rawson who testified that she returned the coat to the victim. This argument rests on the undisputed fact that, when discovered, the coat was not wet and dirty as described by Nurse Rawson.
 {¶ 14} In Strickland v. Washington (1984), 466 U.S. 668, the United States Supreme Court set forth a two-part test to determine ineffective assistance of counsel. Id. at 687. In order to demonstrate ineffective assistance of counsel, an accused must satisfy both prongs. Id. First, the defendant must show that his trial counsel's performance was so deficient that the attorney was not functioning as the counsel guaranteed by the Sixth Amendment of the United States Constitution. Id. Second, he must establish that counsel's "deficient performance prejudiced the defense." Id. The failure to prove any one prong of the Strickland test makes it unnecessary for a court to consider the other prong. State v. Madrigal, 87 Ohio St.3d 378, 389, 2000-Ohio-448, citingStrickland v. Washington, 466 U.S. at 697. In addition, in Ohio, a properly licensed attorney is presumed competent. State v. Smith (1985),17 Ohio St.3d 98, 101, citing Vaughn v. Maxwell (1965),2 Ohio St.2d 299, 301.
 {¶ 15} Assuming, arguendo, that trial counsel's failure to discover that the victim's coat was in the possession of the police department was, somehow, a violation of his duty to his client, the outcome of the trial in this cause would not have been different. Specifically, Melvina's coat could have been wet and dirty as the result of the forced trip to the garage and dried out between the time of the assault and appellant's trial and/or the "table" where the purported consensual sexual intercourse took place could have been *Page 6 
dirty. More importantly, both Officer Payne and Detective Kurtz testified that appellant told them that she was raped. Thus, the trier of fact, the jury, could have disregarded Nurse Rawson's testimony and still decided, based upon the credibility of the witnesses, that a rape, not consensual sex, occurred in the garage on the night of February 19, 2007. See State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus (The credibility of the witnesses at trial is a matter within the purview of the trier of fact). Accordingly, the outcome of this cause would not have been different, and appellant's Assignment of Error No. I is found not well-taken.
 {¶ 16} Appellant's Assignment of Error No. II asserts that he was deprived of his constitutional right to a fair trial because the prosecutor failed to correct Nurse Rawson's testimony when she said that Melvina was allowed to take her coat with her. Because the coat was not "filthy and dirty" when it was discovered, appellant claims that it corroborates Melvina's testimony that she engaged in consensual sex with appellant.
 {¶ 17} A prosecutor, as a state agent, has a constitutional duty to ensure that a defendant has a fair trial. State v. Staten (1984),14 Ohio App.3d 78, 83, citing Mooney v. Holohan (1935), 294 U.S. 103, 113. Part of this duty requires a prosecutor to correct any testimony that he knows to be false. Id., citing Napue v. Illinois (1959), 360 U.S. 264,269.
 {¶ 18} In the present case, Nurse Rawson's testimony with regard to the coat was incorrect; nevertheless, we conclude that the prosecutor's failure to correct this testimony was harmless error beyond a reasonable doubt under Crim. R. 52(A). When evidence is *Page 7 
improperly admitted in derogation of an accused's constitutional rights, said admission is harmless beyond a reasonable doubt if the remaining evidence alone constitutes overwhelming proof of defendant's guilt. State v. Williams (1983), 6 Ohio St.3d 281, 290, citingHarrington v. California (1969), 395 U.S. 250, 254.
 {¶ 19} Here, the testimony of the law enforcement officers, Nurse Rawson, and the physical evidence provide overwhelming evidence of appellant's guilt. R.C. 2907.02(A)(2) defines "rape" as sexual conduct with another by purposely compelling that "person to submit by force or threat of force." Officer Payne, Detective Kurtz, and Nurse Rawson all testified that appellant forced Melvina to engage in sexual conduct with him. This testimony was supported by the physical evidence, particularly Nurse Rawson's testimony detailing the injuries caused by choking to the victim's neck, which, according to Melvina herself, occurred during the sexual intercourse.
 {¶ 20} Furthermore, the testimony of the foregoing witnesses and Melvina constitute overwhelming evidence supporting a verdict that appellant was guilty of kidnapping. R.C. 2905.01(A)(4) reads, in material part:
 {¶ 21} "(A) No person, by force, threat, or deception * * * shall remove another from the place where the other person is found, or restrain the liberty of the other person for any of the following purposes:
 {¶ 22} "* * *
 {¶ 23} "(4) To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will." *Page 8 
 {¶ 24} Specifically, this testimony demonstrates beyond a reasonable doubt that appellant physically restrained Melvina at her client's residence. He then put her head through a car window, punched her in the face, and threatened to kill her and her children while, with his arm around her neck, he forced her to walk several blocks to an empty garage where he engaged in sexual activity against the victim's will.
 {¶ 25} Accordingly, appellant's Assignment of Error No. II is found not well-taken.
 {¶ 26} In Assignment of Error No. III, appellant contends that the trial court abused its discretion by denying his motion for a new trial. In his brief, appellant argues that he was entitled to a new trial under Crim. R. 33(A)(2) due to a number of instances of prosecutorial misconduct. The allegations of misconduct are directed to the prosecutor's failure to correct Nurse Rawson's testimony as to the whereabouts of Melvina's coat and alleged misstatements made by the prosecutor during closing argument.
 {¶ 27} If prosecutorial misconduct had been the rationale for a new trial, appellant's motion would have been untimely because it was filed more than 14 days after the verdict was rendered in this case. See Crim. R. 33(B)[1] . Instead, appellant's motion for a new trial was premised on newly discovered evidence under Crim. R. 33(A)(6) and was timely filed within 120 days after the verdict was entered. Crim. R. 33(B). Because appellant raises issues relative to the motion for a new trial that were not raised and tried *Page 9 
in the trial court, we cannot address these questions for the first time on appeal. State v. Gegia, 157 Ohio App.3d 112, 2004-Ohio-2124, at ¶ 26. Moreover, due to the fact that appellant fails to separately argue that the court made any error in denying his motion for a new trial based upon newly discovered evidence, we find his Assignment of Error No. III not well-taken. See App. R. 12(A)(2).
 {¶ 28} In his Assignment of Error No. IV, appellant maintains that he was denied a fair trial due to remarks made by the prosecutor in closing argument. Considerable latitude is permitted the prosecutor during closing argument. State v. Mauer (1984), 15 Ohio St.3d 239. Prosecutorial misconduct happens only under circumstances where a prosecutor asks improper questions or makes improper remarks, and those questions or remarks prejudicially affected substantial rights of the accused. State v. Smith (1984), 14 Ohio St.3d 13, 14.
 {¶ 29} In determining whether the supposed prosecutorial misconduct prejudiced a defendant an appellate court considers the following factors: "(1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant"State v. Braxton (1995), 102 Ohio App.3d 28, 41 (citations omitted). Keeping in mind that prosecutorial misconduct constitutes reversible error only in "rare instances," State v. DePew (1988),38 Ohio St.3d 275, 288, an appellate court is required to examine the prosecution's closing argument in its entirety. State v. Treesh (2001),90 Ohio St.3d 460, 466. Furthermore, a trial court's decision to deny or to grant a motion for *Page 10 
a mistrial is reviewed under an abuse of discretion standard.State v. Glover (1988), 35 Ohio St.3d 18. As a result, only a decision to deny a motion for a mistrial that is arbitrary, unreasonable, or unconscionable may be reversed by this court.
 {¶ 30} In the present case, appellant raises four remarks made by the prosecutor during her closing argument. The first remark was: "She also testified that he had been threatening her on several occasions since this incident occurred." Appellant immediately objected, and the trial court sustained the objection. Appellant moved for a mistrial. At that point, the trial court engaged in a bench conference with both attorneys, who argued the question of whether Melvina had made such a statement in her testimony. The court below denied the motion for a mistrial and told the parties that he would give a curative instruction.
 {¶ 31} The court then made the following statement on the record:
 {¶ 32} "The court has sustained the objection as to whether there were any subsequent threats after this incident from the defendant to the alleged victim. And so I am not permitting that comment." In his instructions to the jury, the judge further specified: "Statements or answers stricken by the Court or which you were instructed by the court to disregard are not evidence and must be treated as though you never heard them." He also informed the jury of the fact that oral arguments are not evidence.
 {¶ 33} The second comment that appellant objected to was: "I think she does love him. You know what? I think she does love him. I also think that she is afraid of him." Appellant again objected and asked for a mistrial. The trial court overruled the objection, *Page 11 
but in a sidebar warned the prosecutor, stating: "However, I would caution Counsel that personal belief-one can say from the evidence that it can be concluded but not your personal belief."
 {¶ 34} The third remark objected to by appellant was "Why would anybody want a [rape kit performed]? That is not a fun thing to go through, okay?" Appellant objected, and the trial court overruled the objection, without any comment. The fourth remark reads:
 {¶ 35} "If you read the [medical report] and you believe the report then you will find all the elements of felonious assault, rape and kidnapping. Ladies and gentlemen, you are probably thinking well, she's already said I wasn't raped and I wasn't kidnapped. Why should we care if she doesn't care? You may be thinking that. Because you know what, why should we care? Because next time Melvina [J.] may not get off so lucky."
 {¶ 36} Appellant objected to this remark, asserting that it was inflammatory and that it placed the jury members in a position where they had to protect the victim. Appellant again requested a mistrial. The court sustained the objection, struck the remark, and ordered the jury to disregard that portion of the prosecutor's closing argument. The judge overruled the motion for a mistrial.
 {¶ 37} In considering the requisite factors, we first note that, as admitted by appellee, appellant never threatened the victim after February 19, 2007. He did, however, threaten to kill her and/or her children a number of times on that date. Appellant did object to the misstatement, and the court sustained that objection, but opted to give a *Page 12 
curative instruction to the jury. The testimony of Nurse Rawson, Officer Payne, and Detective Kutz, as well as Melvina's medical chart, are strong evidence that a rape, not consensual sex, occurred on that date. In addition, the testimony of the police officers, the nurse, and Melvina herself provided overwhelming evidence that appellant was guilty, beyond a reasonable doubt, of kidnapping. Consequently, we conclude that, in examining all of these factors, appellant was not substantially prejudiced by this first comment.
 {¶ 38} The second and third comments made by the prosecutor contain the personal opinions of that prosecutor. Appellant objected, but those objections were overruled by the lower court. The court did, nevertheless, warn the prosecutor that she could not express any personal opinions. Again, evidence was offered to establish that appellant was guilty of the charged offenses. We therefore hold that the second and third comments did not substantially prejudice appellant.
 {¶ 39} The same is true with regard to the prosecutor's fourth remark. Appellant objected and moved for a mistrial; the court sustained the objection, but denied the motion for a mistrial and gave a curative instruction. To repeat, the evidence was overwhelming as to the charged offenses. As a result, in viewing the prosecutor's closing argument in its entirety, we find: (1) that appellant was not substantially prejudiced by any of the remarks made by the prosecutor; and (2) the trial court's decision to deny appellant's motions for a mistrial was not arbitrary, unreasonable or unconscionable. Therefore, appellant's Assignment of Error No. IV is found not well-taken. *Page 13 
 {¶ 40} The judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Peter M. Handwork, J., Arlene Singer, J., William J. Skow, J., Concur.
[1] The verdict was rendered on June 11, 2007, and the motion for a new trial was filed on July 9, 2007. *Page 1